UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                                                      :
WILLIAM R. ROSA, *on behalf of himself and all others*               :
*similarly situated*,                                                 :
                                                                      :
                                        Plaintiff,                    :
                                                                      :
                        -v-                                           :
                                                                      :
MANDARICH LAW GROUP, LLP and JOHN DOES                                :
1-25                                                                  :
                                                                      :
                                        Defendants.                   :
                                                                      :
----------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/17/2023
```

22-cv-4720 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff William R. Rosa ("Plaintiff") commenced this action on behalf of himself and a

putative class against Defendants Mandarich Law Group, LLP ("MLG" or "Defendant") and

John Does 1-25, MLG's employees, agents, and successors (collectively, "Defendants"). Dkt.

No. 21 ("Amended Complaint" or "Am. Compl."). Defendant MLG moves, pursuant to Federal

Rule of Civil Procedure 12(b)(6), to partially dismiss the Amended Complaint for failure to state

a claim upon which relief can be granted. Dkt. No. 26.

For the following reasons, the partial motion to dismiss is granted.

## BACKGROUND

**I.     The Factual Allegations of the Amended Complaint**

For purposes of this motion, the Court accepts as true the well-pleaded allegations of the

Amended Complaint, as supplemented by the documents incorporated by reference.

MLG is a foreign limited liability partnership that maintains a location in East Amherst,

New York. Am. Compl. ¶ 7. MLG is law firm and a "Debt Collector," as defined by 15 U.S.C.

§ 1692a(6): It uses the instrumentalities of interstate commerce or the mails to engage in the

principal business of collecting debt and/or to regularly collect or attempt to collect debt asserted to be due or owed to another.  *Id.* ¶¶ 9–10.  John Does 1-25 are currently unknown Defendants whose identities will allegedly be obtained in discovery.  *Id.* ¶ 11.  Plaintiff's claims against the John Does 1-25 arise out of the same transaction, occurrence, or series of transactions arising from MLG's actions.  *Id.*

Plaintiff, a natural person, is a resident of Bronx County, New York, and is a "Consumer" as defined by 15 U.S.C. § 1692a(3).  *Id.* ¶ 6.  Prior to January 25, 2022, Plaintiff allegedly incurred a financial obligation debt to Citibank N.A. ("Citibank") by obtaining goods and services primarily for personal, family, and household purposes, and did not incur the obligation for business purposes (the "Citibank Obligation").  *Id.* ¶¶ 15, 17–18.  At some point prior to January 25, 2022, the Citibank Obligation was assigned to Cavalry SPV I, LLC ("Calvary").  *Id.* ¶ 21.  On or before January 25, 2022, Calvary referred the Citibank Obligation to MLG for the purpose of collection.  *Id.* ¶ 22.  At the time of the referral to MLG, the obligation was past due and in default.  *Id.* ¶¶ 23–24.  The Amended Complaint alleges that Plaintiff notified MLG that he was a victim of identity theft.  *See id.* ¶ 34 ("Notifying Defendant that Plaintiff is a victim of identity theft as to the CITI obligation is a form of disputing the CITI obligation.").

The allegations of the Amended Complaint focus on a letter, dated January 25, 2022, that MLG caused to be delivered to Plaintiff in connection with the collection of the Citibank Obligation (the "Letter") sent in response to Defendant's identity-theft notification.[1]  The

---

[1] Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss frequently references a September 22, 2022 letter.  *See, e.g.*, Dkt. No. 25 at ECF pp. 1, 2, 5.  The September 22, 2022 letter, however, references the contents of the Letter attached to the Amended Complaint as Exhibit A.  *See id.* at ECF pp. 1, 2.  For the purposes of this opinion, the Court assumes all references to a September 22, 2022 letter are clerical errors and that Plaintiff intended to reference the Letter.

Amended Complaint alleges that the Letter is a communication as defined by 15 U.S.C.

§ 1692a(2).  *Id.* ¶¶ 25–27.  The Letter, which bears the subject line "CALVARY SPV I, LLC AS

ASSIGNEE OF CITIBANK, N.A. v. WILLIAM R. ROSA Date of Last Payment: August 11,

2019," was sent to the care of Plaintiff's law firm.  *Id.* ¶ 26; *id.* at ECF p. 18.  Plaintiff's law firm

forwarded it to Plaintiff.  *Id.* ¶ 26.  On its face, the Letter reflects that it was not the first

communication with Plaintiff.[2]  The Letter begins:  "You have indicated that you may be the

victim of identity theft."  *Id.* ¶ 33; *id.* at ECF p. 18.  The Letter continues:  "To assist us in our

investigation of your claim, please complete and return the enclosed Identify [sic] Theft

Affidavit and provide a copy of any police report filed by you alleging that you are the victim of

an identity theft crime for the account at issue."  *Id.* at ECF p. 18.  It then requests the following

documentation "to the extent such documentation is relevant to your claim of identity theft":

- Copy of your social security card;

- Copy of a valid state identification card or valid driver's license;

- Proof of residency when the account was incurred.

*Id.*  Finally, the Letter concludes: "If you have any questions, feel free to contact Collection

Supervisor, Keith Gibbons, of our office toll-free at 833.769.2757.  This communication is from

a debt collector."  *Id.*

The Letter includes a blank copy of an "ID Theft Affidavit" (the "Theft Affidavit").  *See*

*id.* at ECF pp. 19–23.  After requesting identifying information about the "Victim," including the

victim's name, date of birth, social security number, driver's license or identification state and

number, and address, *id.* at ECF p. 19, the Theft Affidavit contains several descriptions, preceded

---

[2] Plaintiff's counsel admitted at oral argument that the Letter was not, in fact, the first
communication between MLG and Plaintiff.  Dkt. No. 40 ("Tr.") at 38.

by blank boxes, that indicate "How the Fraud Occurred,"[3] *id.* at ECF p. 20.  The affiant is

directed to check all the boxes that apply.  *Id.*  The Theft Affidavit also asks for the "Victim's

Law Enforcement Actions," including whether the affiant is "willing to assist in the prosecution

of the person(s) who committed this fraud" and whether the affiant is "authorizing the release of

information to law enforcement for the purpose of assisting them in the investigation and

prosecution of the person(s) who committed this fraud."  *Id.* at ECF p. 21.  It also asks whether

information regarding the fraud has already been reported to law enforcement.  *Id.*  Finally, the

Theft Affidavit asks the affiant for documentation to support the claim of identity theft, including

a copy of any report filed with the police or sheriff's department.  *Id.* at ECF pp. 21–22.

After requesting the above referenced information, the Theft Affidavit has a section for

the affiant to certify to the truth of the information provided.  The certification reads in full:

> I certify that, to the best of my knowledge and belief, all the information on and
> attached to this affidavit is true, correct, and complete and made in good faith.  I
> also understand that [sic] is affidavit or the information it contains may be made
> available to federal, state, and/or local law enforcement agencies for such action
> within their jurisdiction as they deem appropriate.  I understand that knowingly
> making any false or fraudulent statement or representation to the government may
> constitute a violation of 18 U.S.C. §1001 or other federal, state, or local criminal
> statutes, and may result in imposition of a fine or imprisonment or both.

---

[3] The options available for the affiant to check are (1) "I did not authorize anyone to use my
name or personal information to seek the money, credit, loans, goods or services described in this
report"; (2) "I did not receive any benefit, money, goods or services as a result of the events
described in this report"; (3) "My identification documents (for example, credit cards; birth
certificate; driver's license; Social Security card; etc.) were □ stolen □ lost on or about [date]";
(4) "To the best of my knowledge and belief, the following person (s) used my information (for
example, my name, address, date of birth, existing account numbers, Social Security
number, mother's maiden name, etc.) or identification documents to get money, credit,
loans, goods or services without my knowledge or authorization"; (5) "I do NOT know who used
my information or identification documents to get money, credit, loans, goods or services
without my knowledge or authorization."  Am. Compl. at ECF p. 20.  There is also an
opportunity to provide "[a]dditional comments."  *Id.*

*Id.* at ECF p. 22; *id.* ¶ 37.  The Theft Affidavit also includes space for the signature of a notary or a non-relative witness.  *Id.* at ECF p. 22; *id.* ¶¶ 38–39.

## II.      The Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA" or the "Act") was enacted by Congress in 1977 "with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692I).  The Act provides a two-stage process for debt collectors to collect outstanding debts.  First, within five days of its initial communication with a consumer, the debt collector must provide the consumer written notice, containing specific information about the debt and explaining the consumer's rights to validation of the debt.  15 U.S.C. § 1692g(a).  The debt collector must provide the following information:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.*  "This debt validation procedure must be clearly communicated to the consumer." *Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002).  Failure to do so

can and frequently does give rise to liability under the FDCPA.  *Id.* (collecting cases); *see also Jacobson*, 516 F.3d at 91–93.

Important consequences follow from the consumer's response to this initial communication.  If the consumer disputes the validity of the debt, then all collection efforts must cease "until the debt collector obtains verification of the debt or a copy of a judgment." 15 U.S.C. § 1692g(b); *see also Jacobson*, 516 F.3d at 89 ("The debt collector may resume collection activities only when it has obtained verification of the debt, and has mailed a copy of the verification to the consumer."); *Bleich*, 233 F. Supp. 2d at 499.  If, on the other hand, the consumer has not disputed the validity of the debt, then the debt collector is entitled to assume that the debt is valid.  15 U.S.C. § 1692g(a)(3).  In that event, "the debt collector is allowed to demand immediate payment and to continue collection activity."  *Jacobson*, 516 F.3d at 89; *see also id.* at 91 ("[A] debt collector is, as a general matter, entitled to demand immediate payment of a debt, and to threaten further action in the event of non-payment.").

The FDCPA also contains provisions restricting how a debt collector may collect on a debt.  Section 1692d prohibits debt collectors from engaging "in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Section 1692e of the FDCPA specifically prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and offers a non-exhaustive list of possible violations of this provision.  *Id.* § 1692e; *see also Story v. Midland Funding LLC*, 2015 WL 7760190, at *3–4 (D. Ore. Dec. 2, 2015) ("Subsections one through sixteen provide a nonexhaustive list of prohibited conduct.").  As relevant here, Section 1692e(1) prohibits "[t]he false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including

the use of any badge, uniform, or facsimile thereof"; Section 1692e(2)(A) prohibits "[t]he false representation of the character, amount, or legal status of any debt"; Section 1692e(9) prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval"; and Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect . . . any debt." 15 U.S.C. § 1692e(1), (2)(A), (9), (10). Finally, Section 1692f proscribes any "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.

A separate federal statute, the Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681 *et seq.* ("FCRA"), addresses, *inter alia*, the obligations of a debt collector who learns information that suggests that a debt it is attempting to collect may be the result of identity theft. *See id.* § 1681m(g). The FCRA is primarily concerned with the "the confidentiality, accuracy, relevancy, and proper utilization of" information contained in credit reports. 15 U.S.C. § 1681 ("Congressional findings and statement of purpose"). One section of the FCRA, Section 1681m(g), is specifically targeted at debt collectors and provides the procedures that a debt collector must follow upon notification that a debt may be fraudulent or the result of identity theft: The debt collector must (1) "notify the third party [on whose behalf the debt collector is acting] that the information may be fraudulent or may be the result of identity theft" and (2) "upon request of the consumer to whom the debt purportedly relates, provide to the consumer all information to which the consumer would otherwise be entitled if the consumer were not a victim of identity theft, but wished to dispute the debt under provisions of law applicable to that person." *Id.* § 1681m(g)(1)–(2).

III.     **Plaintiff's Causes of Action**

Count I of the Amended Complaint alleges violations of Section 1692e of the FDCPA.

Plaintiff alleges that the Letter violates Section 1692e in several respects.  First, Plaintiff alleges

that the Theft Affidavit's requirements that Plaintiff certify that he understood that the

information he provided could be made available to law enforcement agencies and that

"knowingly making any false or fraudulent statement or representation to the government may

constitute a violation of 18 U.S.C. § 1001 or other federal, state, or local criminal statutes" both

falsely represents or implies that the debt collector is affiliated with the United States or any state

in violation of 15 U.S.C. § 1692e(1) and misleads the consumer to believe a government body or

agency is the source of the Letter in violation of 15 U.S.C. § 1692e(9).[4]  Am. Compl. ¶¶ 54–56,

64–66.  Plaintiff also alleges that the Letter and Theft Affidavit mislead the consumer as to the

character and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A) by (1) falsely

conveying that there is a notarization requirement or a "witness non-relative" requirement when

there exists no such requirement under New York General Business Law ("NYGBL") § 604 *et

seq.*, Am. Compl. ¶¶ 59–60; (2) falsely representing that MLG has the authority to be the final

arbiter of whether Plaintiff is or is not responsible for the debt by asking the consumer to

complete the Theft Affidavit and to enclose a copy of any police report alleging he was the

victim of identity theft, *id.* ¶¶ 61–62; and (3) placing an undue burden on Plaintiff that is not

permitted or contemplated under the FCRA.[5]  Finally, for substantially the reasons alleged

---

[4] In Plaintiff's memorandum of law in opposition to MLG's motion to dismiss, he argues that
"Plaintiff alleges that [the certification language] violates Section 1692e(2)(A), Section 1692e(9)
and/or Section 1692e(10)."  Dkt. No. 25 at ECF p. 18.  However, Plaintiff's Amended Complaint
is devoid of any allegations that the certification language violates Section 1692e(2)(A) and
1692e(10).  The Court thus does not consider Defendant's argument with respect to
Section 1692e(2)(A) and (10).
[5] Plaintiff also alleges that the Letter violates Section 1692e(2)(A) because he is not responsible
for the Citibank Obligation.  Am. Compl.  Defendant has not moved to dismiss that allegation of

above, Plaintiff claims that the Letter uses a "false representation or deceptive means to collect . . . [a] debt" in violation of 15 U.S.C. § 1692e(10).  *Id.* ¶¶ 67–73.

In Count II, Plaintiff alleges that Defendant engaged in unfair and unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f, largely based on Plaintiff's allegation that there is no agreement creating the Citibank Obligation.[6]  *Id.* ¶¶ 74–84.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint on June 6, 2022.  Dkt. No. 1.  MLG moved to dismiss the initial complaint on August 23, 2022.  Dkt. No. 12.  Plaintiff's Amended Complaint was accepted for filing on September 20, 2022.  Dkt. No. 21.  As a result, the Court denied MLG's motion to dismiss the initial complaint as moot on September 20, 2022.  Dkt. No. 20.  MLG then filed this motion to dismiss the Amended Complaint and a memorandum of law in support of the motion to dismiss on October 19, 2022.  Dkt. Nos. 26–27.[7]  Plaintiff filed a memorandum of law in opposition to the motion, Dkt. No. 25, to which MLG replied, Dkt. No. 28.  On November 3, 2022, Plaintiff filed a motion for leave to file a sur-reply, Dkt. No. 29, which the Court granted on April 26, 2023, Dkt. No. 34.  Plaintiff filed his sur-reply on April 28, 2023.  Dkt. No. 35.  The Court held oral argument remotely on May 12, 2023.  *See* Minute Entry (May 12, 2023).

---

the Amended Complaint.

[6] Defendant did not move to dismiss Plaintiff's Section 1692f claims that he is not responsible for the Citibank Obligation or that there is no agreement creating the Citibank Obligation.  Dkt. Nos. 26, 27.  Accordingly, this Opinion and Order does not address Count II of the Amended Complaint.

[7] MLG attempted to file this motion on October 4, 2022.  Dkt. No. 23.  The motion was rejected by the Clerk of Court for a filing error.  The motion and a supporting memorandum of law were accepted for filing on October 19, 2022.  Dkt. Nos. 26–27.  Though this filing was arguably untimely, the Court excuses the untimeliness of the motion because it was initially rejected for technical reasons and because Defendant does not argue that the motion is improperly before the Court.

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46, (2011).

**DISCUSSION**

With a single exception, MLG moves to dismiss that portion of the Amended Complaint that alleges that the Letter violated Section 1692e for failure to state a claim for relief.[8]  In order to establish an FDCPA claim, "a plaintiff must show that: (1) the plaintiff is a 'consumer' within the meaning of the Act; (2) the defendant is a 'debt collector'; and (3) the defendant must have

---

[8] As part of Count I, the Amended Complaint alleges that "Defendants violated Section 1692e(2)(A) as Plaintiff is not responsible for the CITIBANK obligation set forth in the January 25, 2022 letter."  Am. Compl.¶ 58.  At oral argument, Plaintiff's counsel represented that it was moving to dismiss Count I in its entirety with the exception of this portion because of its similarities to Count II, which was brought under Section 1692f.  Tr. 3–4.

engaged in conduct in violation of the statute." *Coburn v. P.N. Fin.*, 2015 WL 520346, at *3 (E.D.N.Y. Feb. 9, 2015).  For the purposes of this motion, MLG does not dispute either of the first two elements of an FDCPA violation—that Plaintiff is a "consumer" or that Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a.  It argues, however, that Plaintiff has failed to allege facts to support the third element required to establish a violation of the FDCPA, that MLG engaged in conduct that was violative of the statute.  In particular, MLG argues that the Letter was not false or misleading in any of the ways proscribed by 15 U.S.C. § 1692e.[9]

The Second Circuit evaluates whether a communication complies with the FDCPA from the perspective of the "least sophisticated consumer."  *Jacobson*, 516 F.3d at 90.  The FDCPA is, at heart, a consumer protection statute, *id.* at 95, and "the statute protects the gullible as well as the shrewd," *id.* at 90.  Under "the least sophisticated consumer standard, . . . a notice is deceptive or misleading if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'"  *Cortez v. Forster & Garbus, LLP*, 999 F.3d 151, 154 (2d Cir. 2021) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).  The FDCPA "also protects the interests of law-abiding debt collectors," *Jacobson*, 516 F.2d at 95, including "from

---

[9]Plaintiff has not alleged that he completed the Theft Affidavit or suffered damages or financial harm from receipt of the Letter.  Prior to the Supreme Court's decision in *Spokeo Inc. v. Robins*, 578 U.S. 330 (2016), the Second Circuit held that "actual damages are not required for standing under the FDCPA."  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003).  *Spokeo*, which addressed standing under the FCRA and held that "a bare procedural violation, divorced from any concrete harm, [could not] satisfy the injury-in-fact requirement of Article III," 578 U.S. at 333, does not appear to have altered that conclusion.  "[T]he majority of post-*Spokeo* decisions that have analyzed standing under the FDCPA have found that alleging a 'use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt,' establishes a concrete injury."  *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 145 (E.D.N.Y. 2016) (Bianco, J.) (second alteration in original) (collecting cases) (quoting 15 U.S.C. § 1692e).  The Court follows that line of authority until or unless the Second Circuit or United States Supreme Court holds that something more is required for standing under the FDCPA.

unreasonable constructions of their communication," *id.* at 90.  The FDCPA therefore does not "aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices.'"  *Id.* (quoting *Clomon*, 988 F.2d at 1320); *see Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020) (same).  "[T]he 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  *Clomon*, 988 F.2d at 1319.  To show that a communication is misleading, the plaintiff must demonstrate that it is "susceptible of a reasonable but inaccurate interpretation."  *Cortez*, 999 F.3d at 156.

However, "not every technically false representation by a debt collector amounts to a violation of the FDCPA."  *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) (citation omitted).  That is because "statements must be *materially* false or misleading to be actionable under the FDCPA."  *Id.* (emphasis added).  "[A] statement is material 'if it is capable of influencing the decision of the least sophisticated consumer.'"  *Id.* (citation and alteration omitted).  Stated differently, "[t]he materiality inquiry focuses on whether the false statement would 'frustrate a consumer's ability to intelligently choose his or her response.' . . . '[M]ere technical falsehoods that mislead no one' are immaterial and consequently not actionable under § 1692e."  *Id.* at 86 (citations omitted); *see also Bryan v. Credit Control, LLC*, 954 F.3d 576, 582 (2d Cir. 2020).

MLG argues that the language of the Theft Affidavit does not create the false impression that the debt collector is affiliated with the United States in violation of Section 1692e(1) and does not mislead the consumer to believe a government body or agency is the source of the Letter and Theft Affidavit in violation of Section 1692e(9).  Dkt. No. 27 at 8–9.  MLG also argues that the Letter and Theft Affidavit do not mislead the consumer as to the character and

legal status of the debt in violation of Section 1692e(2)(A), does not constitute a "false representation or deceptive means to collect . . . any debt" in violation of Section 1692e(10), and does not place undue burdens on Plaintiff in violation of both Section 1692e(2)(A) and 1692e(10). *Id.* at 3–7. The Court addresses each set of arguments in turn.

## I.      False Representation of Affiliation or Source

Plaintiff's first set of claims allege that the language of the Letter and Theft Affidavit creates the false impression that the debt collector is affiliated with the United States in violation of Section 1692e(1) and also creates a false impression as to its source in violation of Section 1692e(9). Plaintiff focuses on two phrases in the signature block. First, Plaintiff focuses on the sentence that states: "I also understand that is [sic] affidavit or the information it contains may be made available to federal, state, and/or local law enforcement agencies for such action within their jurisdiction as they deem appropriate." Am. Compl. ¶¶ 55, 65. Next, Plaintiff focuses on the following sentence, which states: "I understand that knowingly making any false or fraudulent statement or representation to the government may constitute a violation of 18 U.S.C. §1001 or other federal, state, or local criminal statutes, and may result in imposition of a fine or imprisonment or both." *Id.* ¶¶ 56, 66.

Section 1692e makes it unlawful for a debt collector to use a communication that contains a "false representation or implication that the debt collector is vouched for, bonded by, or affiliates with the United States or any State, including the use of any badge, uniform, or facsimile thereof." 15 U.S.C. § 1692e(1). An affiliate of the government is an entity that is "united" or "in close connection, allied, associated or attached" to the government. *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). The government vouches for a debt collector when it gives a "personal assurance" or acts as a guarantor. *Id.* at 1258. "Common violations of this section would include falsely claiming to be a law officer in order to locate or

repossess collateral, claiming governmental affiliation in order to facilitate skip-tracing efforts, or using the return address of a government agency on an envelope."  1 Kurt R. Mattson, *Fair Debt Collection Practices* § 1.06(6)(b) (2023) [*hereinafter*, "Fair Debt Collection Practices"]. Further, a debt collector may not insinuate or suggest indirectly "what obviously cannot be stated directly."  *Gammon*, 27 F.3d at 1258.  Courts have held, for example, that a debt collector may not gratuitously mention its governmental clients in a fashion that would "leave the impression that it is closely involved with these governmental entities" and can use their systems to collect delinquent debts, *id.*, or use letterhead that contains the word "federal" with "an icon of a bird with its wings spread, grasping olive branches in its right talon and arrows in its left talon," creating the perception that the debt collector is related to the federal government, *Adams v. First Federal Credit Control, Inc.*, 1992 WL 131121, at *1–2 (N.D. Ohio May 21, 1992).

Viewed in isolation, the reference to 18 U.S.C. § 1001 in the last sentence of the signature block might lead the least sophisticated consumer to believe that MLG was affiliated with the government.  A false statement to a private actor, such as a debt collector, would not itself give rise to Section 1001 criminal liability.  Congress "impose[d] criminal sanctions for deliberately false statements submitted to a *federal agency*" or within the jurisdiction of a federal agency.  *United States v. Yermian*, 468 U.S. 63, 74–75 (1984) (emphasis added); *see also United States v. Davis*, 8 F.3d 923, 929 (2d Cir. 1993); *cf. United States v. Litvak*, 2013 WL 5740891, at *8 (D. Conn. Oct. 21, 2013) (noting that "extensive statutory and regulatory framework for creation, funding, and supervision of" a private entity might bring statements to a private entity under the auspices of Section 1001).  However, the "least sophisticated consumer" test requires the Court to read Defendant's communication "in its entirety."  *Jacobson*, 516 F.3d at 93; *see also Rubin v. Montefiore Med. Ctr.*, 2021 WL 4538603, at *1 (2d Cir. Oct. 5, 2021); *Schweizer v.*

14

*Trans Union Corp.*, 136 F.3d 233, 237–38 (2d Cir. 1998) (analyzing debt collection letter as a whole under the least sophisticated consumer standard).  And, the last sentence of the signature block does not stand alone.  It is immediately preceded by a warning to the consumer that the "affidavit or the information it contains *may be made available to federal, state, and/or local law enforcement agencies* for such action within their jurisdiction as they deem appropriate."  Am. Compl. at ECF p. 22 (emphasis added).  This language clearly suggests, even to the least sophisticated consumer, that MLG is not a federal, state, or local law enforcement agency; the language conveys that the Theft Affidavit may be given to a governmental law enforcement agency and that, in the event that it is, a false statement contained in the affidavit may give rise to criminal liability.

The understanding that MLG is not affiliated with the Government would only be reinforced by the box on the immediately preceding page, which any consumer would naturally read before signing the Theft Affidavit.  That box, which appears under the heading Victim's Law Enforcement Actions, gives the consumer the option to "authoriz[e] [or not to authorize] the release of this information to law enforcement for the purpose of assisting them in the investigation and prosecution of the person(s) who committed this fraud."  *Id*. at ECF p. 21.  And the Letter makes clear that "[t]his communication is from a debt collector"—not a government entity.  *Id.* at ECF p. 18.  The least sophisticated consumer, viewing the document as a whole, thus could only be left with the understanding that MLG is not affiliated with the government and that any information MLG shares with the government must be specifically authorized by the consumer.  *See Sullivan v. Credit Control Servs.*, 745 F. Supp. 2d 2, 8 (D. Mass. 2010) (applying Seventh Circuit's nearly identical "unsophisticated consumer" test and holding that a letter that listed GEICO's full name—"Government Employees Insurance

Company"—did not violate Section 1692e(1) because the word "Company" "plainly suggests that the entity is a private corporate entity," the words "Credit Collection Services" were printed in large print, and there was a clear disclaimer that the communication was sent by a debt collector).  The language in the signature block and in the box on the immediately preceding page would make no sense if MLG were already affiliated with the government.

Plaintiff's Section 1692e(1) claim fails for an independent reason:  Plaintiff has failed to allege that the language in the signature block, even if it were misleading, was *materially* so. *Cohen*, 897 F.3d at 85 ("[S]tatements must be materially false or misleading to be actionable under the FDCPA.").  Under the FDCPA, a debt collector is liable for a false or misleading statement only if that statement "is capable of influencing the decision of the least sophisticated consumer." *Id.* (cleaned up).  The statement must be one that "would frustrate a consumer's ability to intelligently choose his or her response." *Id.* at 86 (internal quotation marks and citation omitted).  "[C]ommunications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA.  By contrast, mere technical falsehoods that mislead no one are immaterial and consequently not actionable under § 1692e." *Id.* (internal quotation marks and citations omitted).

The statement in the signature block conveys that the Theft Affidavit must be completed with care.  As the Theft Affidavit makes clear, unless the consumer does not grant his or her authorization, the information in the Theft Affidavit may be provided to federal, state, or local law enforcement and, if it is provided to law enforcement, a knowingly false statement may subject the consumer to criminal liability.  The effect of the language in the signature block would be to deter the consumer from making a false statement, either by only providing true

information or by not completing the Theft Affidavit at all.  Though the language might "impede a consumer's ability" to make a false statement to MLG in a technical sense, in the sense that a consumer reading the language would not feel free to lie, false statements are not the kinds of statements that the FDCPA is designed to encourage.

Further, unlike the FCRA, which requires an entity furnishing information to "a consumer reporting agency" to "conduct an *investigation* with respect to [any] disputed information," 15 U.S.C. § 1681s-2(b)(1)(A) (emphasis added), the FDCPA only requires a debt collector to provide a copy of "verification of the debt or a copy of a judgment, or the name and address of the original creditor" to the putative-debtor, *id.* § 1692g(b).  "[T]he Second Circuit has not spoken authoritatively on the issue of what constitutes 'verification of the debt' for purposes of complying with the FDCPA."  *Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 500 (E.D.N.Y. 2015).  However, verification of a debt requires less of the debt collector than an independent investigation under the FCRA demands.  *See* 1 Fair Debt Collection Practices § 1.06(11); *see also Scheinman v. Glass & Braus LLC*, 2020 WL 6875139, at *9 (D. Conn. Nov. 23, 2020) ("District courts within the Second Circuit have consistently held that 'verification . . . does not require the debt collector to do anything more than confirm the amount of the debt and the identity of the creditor, and relay that information to the consumer.'" (citation omitted)); *Panzer v. Alternative Claims Mgmt., LLC*, 2016 WL 3771251, at *5 (S.D.N.Y. July 8, 2016) ("However, courts have 'interpreted 'verification' to require only that the debt collector obtain a written statement that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt.'" (quoting *Ritter*, 118 F. Supp. 3d at 500)); *cf. Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173⁻74 (9th Cir. 2006) ("At the minimum, 'verification of a debt involves nothing more than the debt

collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'" (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)).

Here, MLG appears to have gone beyond the scope of what is required by the FDCPA by conducting an independent investigation of the validity of the debt, and not merely providing verification of the debt, before continuing collections.  MLG is entitled, when conducting this investigation and taking action beyond what is required under the FDCPA that is protective of the putative-creditor, to ensure that the information provided is accurate.  Just as the FDCPA does not "impos[e] a duty on debt collectors to encourage consumers to delay repayment of their debts," *Taylor v. Fin. Recovery Servcs., Inc.*, 886 F.3d 212, 214 (2d Cir. 2018), it does not require a debt collector to facilitate the provision of inaccurate information.  The language of the Theft Affidavit simply conveys information regarding the possible consequences of making a false statement in the Theft Affidavit.  It does not mislead the putative-debtor as to the nature and legal status of the underlying debt or impede a consumer's ability to respond to or dispute collection, in any way that the FDCPA is intended to protect.  Stated otherwise, it "would not have caused even a highly unsophisticated consumer to suffer a disadvantage in charting a course of action in response to the collection effort."  *Cohen*, 897 F.3d at 86.

Plaintiff's claim under Section 1692e(9) fails for largely the same reasons.  That subsection prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved" by a government body. 15 U.S.C. § 1692e(9).  "Courts generally limit this provision to instances in which the debt collector 'overtly impersonates a government agency' or 'attempts to hide its identity by using a false alias.'"  *Stewart v. Bureaus Inv. Grp., LLC*, 2015 WL 7572312, at \*19 (M.D. Ala. Nov. 24, 2015) (quoting *Sullivan*, 745 F. Supp. 2d at 10); *see also Douyon v. N.Y. Med. Health Care, P.C.*,

894 F. Supp. 2d 245, 261 (E.D.N.Y. 2012), *order amended on reconsideration*, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013).  It is unlawful under this provision for a debt collector to transmit documents that simulate the legal process of a state or federal court.  *See Kachlic v. Bursey & Assocs.*, 2013 WL 820375, at *3 (D. Ariz. Mar. 5, 2013).

Plaintiff bases his claim for a violation of this subsection on the language of the signature block, discussed above, combined with the language and impression of the Letter, which bears the name of the law firm in large, bold, capitalized letters, indicates that the Mandarich Law Group is licensed by the Department of Consumer Affairs, and bears the caption "Cavalry SPV I, LLC as Assignee of Citibank, N.A. v. William R Rosa."  Am. Compl. at ECF p. 18.  The Letter, and the Theft Affidavit, viewed in their entireties, do not "create the false impression that [they were] issued or approved by a court."  *Johnson v. Eaton*, 873 F. Supp. 1019, 1028 (M.D. La. 1995).  The Theft Affidavit itself does not bear any logo or insignia suggesting it emanated from or was sponsored by a governmental agency; it does not contain any logo or insignia whatsoever. It simply is titled: "ID Theft Affidavit."  Am. Compl., Ex A at ECF p. 19.  Nor does the Letter convey any other impression of governmental authorization, issuance, or approval.  It asks the consumer to complete and return the Theft Affidavit "[t]o assist *us* in our investigation of your claim," *id.* at ECF p. 18 (emphasis added), and it provides the contact information of MLG's "Collection Supervisor" if the consumer has any questions, *id.*  It identifies that the communication is "from a debt collector" and asks that the Theft Affidavit and "any police report filed by [the consumer] alleging that [the consumer is] a victim of an identity theft crime for the account at issue" be returned to the debt collector.  *Id.*  The fact that the Letter indicates that MLG is licensed by the New York City Department of Consumer Affairs is not enough to show governmental authorization, issuance, or approval.  "[L]icensure to do business in the state

is not commensurate with 'affiliation' with the state government and is not sufficient to suggest that the communication emanated from the Government. *See Stewart*, 2015 WL 7572312, at *16; *Sullivan*, 745 F. Supp. 2d at 8. In fact, it seems the disclosure of MLG's license number was required by New York City law. *See* New York City, N.Y., Rules, Tit. 6, § 1-05 ("Any advertisement, letterhead, receipt, online media, website, electronic advertisement, or other printed or electronic matter of a licensee must contain the license number assigned to the licensee by the Department.").

Finally, the addition of the case caption in the subject line of the letter does not convey the impression that the Letter was issued by a court. The Letter is addressed to Plaintiff's lawyers.[10] Defendant represented at oral argument, and Plaintiff does not dispute or allege otherwise, Defendant had already instituted a debt collection lawsuit at the time the Letter was sent and Plaintiff had answered the complaint in that lawsuit. Dkt. No. 40 ("Tr.") 40–41. The subject line of the Letter thus clearly indicates to the reader, in a fashion that is not misleading, the subject to which the letter relates.[11]

---

[10] Under the FDCPA, Defendant was required to send the Letter and Theft Affidavit directly to Plaintiff's attorney. *See* 15 U.S.C. § 1692c(a)(2) (noting that "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer" or unless the consumer gives its prior consent or a court of competent jurisdiction gives the debt collector "express permission").

[11] Plaintiff alleges that the Theft Affidavit violates Section 1692e(9) for two reasons. First, it contains a provision indicating that the information in the Theft Affidavit may be shared with law enforcement agencies, and second, it contains a provision indicating that Plaintiff may be subject to liability under 18 U.S.C. § 1001 for knowingly making a false or fraudulent statement. *See* Am. Compl. ¶¶ 65–66. The Amended Complaint does not contain allegations suggesting that MLG's mailing violates Section 1692e(9) because the Theft Affidavit and Letter suggest that MLG is licensed by the Department of Consumer Affairs or because the Letter contains a subject line that resembles a court caption. Thus, Plaintiff's claim under Section 1692e(9), to the extent that it is based on facts that are not alleged in the Amended Complaint, fails for this independent reason. *See Budhani v. Monster Energy Co.*, 2021 WL 5761902, at *3 (S.D.N.Y.

## II.       Misrepresentation of Character, Amount or Legal Status of Debt

Plaintiff next alleges that, by requesting that the consumer complete the Theft Affidavit and that the consumer have the affidavit either notarized or signed by a non-relative witness, neither of which is required under New York law, the Theft Affidavit misleads the consumer as to the character and legal status of the debt and falsely represents that MLG has the authority to be the final arbiter of whether Plaintiff is or is not responsible for the debt in violation of 15 U.S.C. § 1692e(2)(A) and 1692e(10).[12]  Am. Compl. ¶¶ 61, 71.  Plaintiff also alleges that the Letter places an undue burden on Plaintiff that is not permitted or contemplated under Section 1681m(g) of the FCRA and thus violates Section 1692e(2)(A) and (10).  *Id.* ¶¶ 63, 73.  Plaintiff notes that the consumer is not required under either New York State law or federal law to assist a debt collection agency in investigating the consumer's claim that he is a victim of identity theft.

---

Dec. 3, 2021) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks, citation, and alteration omitted)).

[12] Plaintiff also alleges that the portion of the Letter requesting that Plaintiff complete the Theft Affidavit violates Section 1692e(2)(A) and (10) because "it falsely represents Defendant's dispute obligations pursuant to Section 1692e(8)." Am. Compl. ¶¶ 62, 72. Section 1692e(8) prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).  Plaintiff appears to be arguing that the act of sending the Theft Affidavit suggests that MLG does not need to report the debt as disputed, as it is required to do under Section 1692e(8), and is thus a false representation as to the character of the debt under Section 1692e(2)(A) and a false representation used to collect the debt in violation of Section 1692e(10).  *See* Dkt. No. 25 at pp. 15–16.  However, the act of requesting that an individual fill out the Theft Affidavit does not suggest, even to the least sophisticated consumer, that MLG will fail to communicate to a third party that the debt is disputed.  *See In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Pracs. Litig.*, 208 F.R.D. 493, 503 (S.D.N.Y. 2002) (concluding on a motion for summary judgment that, *inter alia*, because "[n]owhere in RMA's letter does defendant threaten to report orally disputed debts as undisputed . . . Plaintiff's claim pursuant to § 1692e(8) fails as a matter of law").  Further, Section 1692e(8) does not put the burden on the debt collector to affirmatively report the debt as disputed; it only requires the debt collector to report the debt as disputed "whenever the debt collector communicates with others about the debt." *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) (noting that "unlike the rights defined by § 1692g(a)(4), (a)(5)," Section 1692e(8) does not "call for affirmative steps on the part of the debt collector").  Thus, Plaintiff's claims brought under Section 1692e(8) must fail.

Dkt. No. 25 at ECF p. 15.  Plaintiff thus argues that the Letter represents an effort by Defendant to "avoid its obligation to notify Citibank and/or Cavalry about the fraud/identity theft information, and instead attempts to place undue burdens on Plaintiff . . . to assist Citibank/Calvary—burdens that are not permitted or even contemplated by 15 U.S.C. § 1681m(g)."  *Id.* at ECF p. 17.  In sum, Plaintiff appears to be arguing that, by asking the consumer to complete the Theft Affidavit and to have the Theft Affidavit either notarized or signed by a non-relative third party, the Letter misleads the consumer as to his legal responsibilities, thus misrepresenting the character of the debt in violation of Section 1692e(2)(A), and uses false representations and deceptive means to collect the debt in violation of Section 1692e(10).[13]  *Id.* at ECF pp. 17–19.

Plaintiff has not alleged that the Letter or Theft Affidavit falsely represents the character, amount, or legal status of the debt in violation of § 1692e(2)(A).  15 U.S.C. § 1692e(2)(A). There are two references to the debt in the Letter:  First, the Letter indicates that the debt is held by Cavalry SPV I, LLC as assignee of Citibank, and second, that the date of last payment was August 11, 2019.  Am. Compl. at ECF p. 18.  The Letter also suggests that the debt may be fraudulent by acknowledging Plaintiff's claim that he "may be the victim of identity theft."  *Id.* Putting aside the claim that Plaintiff was not in fact the debtor and that the Letter was misleading in that respect, as to which Defendant does not move and the Court does not rule, *see supra* note 8,[14] these statements are not false representations about the amount or legal status of the

---

[13] Notably, Plaintiff does not allege that MLG used "any false representation or deceptive means . . . to obtain *information* concerning a consumer."  15 U.S.C. § 1692e(10) (emphasis added); *see* Am. Compl. ¶ 67 ("Section 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.").  The Court thus does not address whether the Letter or Theft Affidavit represent impermissible attempts to collect information about Plaintiff.

[14] There is case law to suggest that an attempt to collect a debt from a non-debtor may be a false

debt.  Nor are Plaintiff's attempts to argue that the Theft Affidavit changes the "character of the

debt, [because it] shifts all the burden on Plaintiff to address the issue of identity theft" and goes

beyond what is required of 15 U.S.C. § 1681m(g), *see* Dkt. No. 25 at ECF pp. 17–18, persuasive.

The "character" of the debt is "a reference to the kind of obligation," including "the genesis,

nature, or priority of the debt."  *Rhone v. Med. Bus. Bureau, LLC*, 915 F.3d 438, 440 (7th Cir.

2019) (noting that "few decisions discuss the meaning of that word [(*i.e.*, character)] in any debt-

related context"); *see also Heffington v. Gordon, Aylworth & Tami, P.C.*, 2018 WL 3763799, at

*5 (D. Or. Aug. 8, 2018) ("Cases interpreting the 'character' or 'legal status' components of

§ 1692e(2)(A) illustrate that those elements typically address whether the debt itself is

collectable, for example, if it is barred by a statute of limitations or owed by someone else, or

what comprises the debt, for example if the debt includes non-recoverable fees." (collecting

cases)).  Plaintiff's allegations, therefore, do not speak to the character of the debt.  Which party

has the burden of proving that the debt was issued by the putative-debtor—including by

requesting a notary or non-relative witness signature or by representing that MLG is the final

arbiter of the debt—and whether MLG has gone beyond what is required under the FCRA in that

respect says nothing about the debt's underlying character; the *dispute* over the debt centers on

whether it is or is not owed by Plaintiff and whether it was or was not fraudulently obtained

through identity theft, but the character of the debt remains unchanged.  Thus, even assuming

*arguendo* that Defendant has falsely represented Plaintiff's obligations under the FDCPA and

Defendant's ability to request information under the FCRA, these representations are not false

---

representation of the character or legal status of the debt.  *See Bodur v. Palisades Collection,
LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (Courts "have found that an attempt to collect a
debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt
in violation of 1692e." (collecting cases) (citation omitted)).

representations about the *character* of the debt itself and are not violations of Section 1692e(2)(A).  *See Collins v. Asset Acceptance, LLC*, 2010 WL 3245072, at *1 (N.D. Ill. Aug. 13, 2010) (concluding that a theft affidavit indicating that the dispute would be "resolved" if the affidavit was not returned "is a characterization of the dispute, not of the debt").

Plaintiff next argues, without citation to case law, that the Letter and Theft Affidavit are deceptive for several reasons, including because (1) Plaintiff is not responsible for the debt, (2) the Letter falsely represents that Defendant is the final arbiter of whether Plaintiff is responsible for the debt, and (3) the Theft Affidavit contains a notarization or non-relative witness signature requirement not mandated by New York law.  *See* Am. Compl. ¶¶ 68–71; Dkt. No. 25 at ECF pp. 18, 22.  Plaintiff also argues, again without citation to case law, that the Letter and Theft Affidavit are deceptive because they place undue burdens on Plaintiff not contemplated under the FCRA.  *See* Am. Compl. ¶ 73; Dkt. No. 25 at ECF pp. 15–17.  Plaintiff's allegations can be understood to assert two separate, but related, violations of Section 1692e(10).  First, by arguing that the Letter and Theft Affidavit violate Section 1692e(10) because Plaintiff is not responsible for the debt and on the theory that they place undue burdens on Plaintiff not permitted by the FCRA, Plaintiff can be understood to be alleging that debt collectors are prohibited from conducting any investigation into the validity of a debt after its validity is disputed.  Second, Plaintiff's allegations suggest that the specific ways in which MLG conducted the investigation—including by suggesting Defendant was "the final arbiter of whether Plaintiff is/is not responsible for the debt" and by requiring the signature of a notary or a non-relative witness—violates Section 1692e(10).  Plaintiff's arguments lack merit.

As a threshold matter, the Court assumes that the Letter and Theft Affidavit *could*, in isolation, be seen as a "deceptive means to collect or attempt to collect any debt."  15 U.S.C.

§ 1692e(10).  Though the Letter does not require that the putative-debtor complete the affidavit, *cf.* Dkt. No. 27 at 4 ("[A] basic review of the Letter shows that nowhere in the Letter or the ID Theft Affidavit does it state that Plaintiff must complete all of the sections of the form."), the least sophisticated consumer, after receiving an official letter from a debt collector, is unlikely to view the admonition to "please complete and return the enclosed [] Theft Affidavit," Am. Compl at ECF p. 18, as a request to complete the Theft Affidavit, as opposed to a requirement.  The information in the Theft Affidavit could, in turn, be helpful to the debt collector's efforts to verify, *see* 15 U.S.C. § 1692g, and thus collect the debt.  And the process of completing the affidavit is costly to the putative-debtor:  It takes both time and mental energy to provide the requested information and to find a non-relative witness or notary to sign the affidavit.[15]  Thus, the nature of the Letter—which contains no disclaimer that the putative-debtor is not required to complete the Theft Affidavit—could be viewed as a deceptive method to attempt to collect the debt.

However, while Defendant might be better served by adding a disclaimer, the transmission of the Theft Affidavit without such a disclaimer does not violate the FDCPA.  "The "FDCPA . . . does not prohibit debt collectors from requesting that consumers support their claims of identity theft with notarized affidavits or police reports and . . . multiple courts have held that such requests are permissible under the FDCPA."  *Story*, 2015 WL 7760190, at *8 (collecting cases); *see also Ozturk v. Amsher Collection Servs., Inc.*, 2022 WL 1602192, at *8 n.5 (D.N.J. May 20, 2022) ("Plaintiff has nevertheless offered no authority suggesting that a debt collector or creditor may not seek helpful information from the victim, such as a police report or

---

[15] Notarizing the affidavit may also cost money.  *See* N.Y. Exec. Law § 136 (permitting a notary public to charge $2 for notarial acts); *see also* N.Y. Comp. Codes R. & Regs. tit. 19, § 182.11 (permitting an electronic notary public to charge $25 for electronic notarial acts).

affidavit.").  Nor could it.  The purpose of the FDCPA is twofold; it is designed both to protect consumers from abusive practices and to protect scrupulous debt collectors from the advantages that unscrupulous debt collectors accrue.  *See Jacobson*, 516 F.3d at 89.  The debt collector who investigates claims of identity theft is not engaging in abusive practices simply because it is conducting an investigation.  In fact, an investigation can—and likely often is—protective of the putative-debtor:  It is unlikely that a debt collector will go through the time and expense of collecting on a debt or initiating or maintaining a lawsuit if the putative-debtor is not responsible for the debt, and doing so would be sanctionable, including under the FDCPA.  *See Story*, 2015 WL 7760190, at *9 (noting that the debt collector "voluntarily dismissed its suit against [the putative-debtor] as soon as [the putative-debtor] supported her claim" of identity theft by completing the requested affidavit).  An investigation, if properly done, is thus protective of consumers and furthers the statutory purpose of the FDCPA.

Further, as noted, a separate statute, the FCRA, which predates the FDCPA, *requires* an entity furnishing information to "a consumer reporting agency" to "conduct an investigation with respect to [any] disputed information."  15 U.S.C. § 1681s-2(b)(1)(A).  Though not every debt collector is necessarily an entity that also furnishes information to "a consumer reporting agency,"[16] there are debt collectors who also furnish information to reporting agencies and thus would be subject to the FCRA's investigation requirements after receiving notice of the dispute. *See, e.g.*, *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022) (noting that "receipt of [a notice of identity theft] triggered a statutory obligation [for the debt collector] to "conduct an investigation with respect to the disputed information" (quoting 15 U.S.C.

---

[16] In fact, Defendant suggested during oral argument that it was not under an obligation to independently investigate the claim, but did so on its own volition.  *See* Tr. 8–10, 41.

§ 1681s-2(b)(1)(A)).  In fact, the FDCPA appears to contemplate that debt collectors may also furnish information to consumer reporting agencies, and thus be subject to the FCRA.  Section 1692e(8) prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, *including the failure to communicate that a disputed debt is disputed*."  15 U.S.C. § 1692e(8); *see also id.* § 1692a(2) (defining "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium").  Although the FCRA does not specifically mention "credit reporting agency," Section 1692e(8) appears, at least in part, to target the provision of false information to credit reporting agencies by debt collectors.  *See Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 172 (E.D.N.Y. 2013) (concluding that "misrepresentations" to credit reporting agencies "fall comfortably within the plain language of the FDCPA," including Section 1692e(8)); *Kinel v. Sherman Acquisition II, LP*, 2007 WL 2049566, at *1 (S.D.N.Y. July 13, 2007) (concluding that Section 1692e(8) includes, but "is not limited to[,] communications with credit reporting agencies").  Plaintiff's argument—that the act of sending the Letter and Theft Affidavit violates Section 1692e(10)—would thus lead to the untenable outcome that a debt collector, subject to both the FDCPA and the FCRA, would violate the FDCPA merely by fulfilling its obligations under the FCRA.  When faced with two possibly conflicting federal statutes, a court must, if at all possible, construe them "to give effect to each if we can do so while preserving their sense and purpose."  *Watt v. Alaska*, 451 U.S. 259, 267 (1981).  As the Supreme Court has stated, "we are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  *Morton v. Mancar*, 417 U.S. 535, 551 (1974); *see also Epic Sys. Corp. v. Lewis*, 138

S. Ct. 1612, 1624 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." (internal quotation marks omitted) (quoting *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995))).  The Court thus declines to adopt Plaintiff's readings of the FDCPA and the FCRA that fails to harmonize the two statutes and concludes that it cannot be a violation of Section 1692e(10) to seek information from a putative-debtor related to a disputed debt.

Plaintiff's attempt to argue that the Theft Affidavit violates Section 1692e(10) because it goes beyond what is permitted and contemplated by 15 U.S.C. § 1681m(g) is no more persuasive.[17]  *See* Dkt. No. 25 at ECF p. 17.  Section 1681m(g) of the FCRA provides that if a debt collector "is notified that any information relating to a debt . . . may be fraudulent or may be the result of identity theft," the debt collector must (1) notify the creditor "that the information may be fraudulent or may be the result of identity theft" and (2) provide the information to the putative-debtor to which the putative-debtor "would otherwise be entitled if the [putative-debtor] were not a victim of identity theft, but wished to dispute the debt under provisions of law applicable to that person."  15 U.S.C. § 1681m(g).  By its clear terms, Section 1681m(g) sets a *floor*, not a ceiling, for the actions that a debt collector must take in response to the receipt of information that a debt may be fraudulent or the product of identity theft.  And Plaintiff's

---

[17] Throughout Plaintiff's Memorandum in Opposition to the Motion to Dismiss, he argues that the Letter and Theft Affidavit violates Section 1692e because they contain provisions and language not permitted or required by NYGBL § 604-a.  *See, e.g.*, Dkt. No. 25 at ECF pp. 14, 15, 16 n.5.  However, the only allegations in the Amended Complaint related to NYGBL § 604-a center on the fact that the non-relative witness or notarization requirement of the Theft Affidavit is not required under the statute.  *See* Am. Compl. ¶¶ 42–43, 59–60, 69–70.  Thus, the Court only considers Plaintiff's argument that the Theft Affidavit violates Section 1692e because it contains provisions not required under New York law insofar as that argument is focused on the non-relative witness or notarization requirement.

argument would lead to the untenable outcome that a debt collector, in its capacity as a reporting entity, would be exposed to liability for taking actions that it is required to do under the FCRA, because another section of the same statute does not contemplate the debt collector taking such action. *See In re Ames Dep't Stores, Inc.*, 127 B.R. 744, 752 n.5 (Bankr. S.D.N.Y. 1991) ("It is fundamental to statutory construction that each part of a section must be read in connection with other related parts so as to produce a harmonious result." (collecting cases)).  Nor does the Amended Complaint contain any allegations that MLG did not notify Plaintiff of the potentially fraudulent information or denied Plaintiff information that he requested, as required by Section 1692m(g).  Thus, Plaintiff's attempts to state a claim under Section 1692e(10) for an alleged violation of Section 1681m(g) must fail.[18]

However, just because Defendant is permitted to conduct an investigation into Plaintiff's claims of identity theft does not mean that every investigative technique is therefore permissible; it is possible that an otherwise permissible investigation of a claim of identity theft can violate Section 1692e because it employs false, deceptive, or misleading means to collect that information.  Plaintiff alleges that two specific aspects of the Letter and Theft Affidavit violate Section 1692e(10).  Plaintiff alleges that the Letter "falsely represents whether Defendant has the

---

[18] Plaintiff's attempt to invoke Section 1681m(g) of the FCRA fails for an independent reason. Even had Plaintiff plausibly alleged an FCRA violation, there is no basis for reading the FCRA claim into the FDCPA.  "[O]nly Federal agencies and officials can enforce Section 1681m." *Shaw v. Yorke*, 2011 WL 2563177, at *1 (M.D. Fla. June 28, 2011); *see* 15 U.S.C. § 1681m(h)(8)(B) ("This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.").  As a result, "Congress has not provided a private right of action for a violation of the provision of FCRA at issue." *Ozturk*, 2022 WL 1602192, at *7; *see also Perry v. First Nat. Bank*, 459 F.3d 816, 823 (7th Cir. 2006) ("The unambiguous language of § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m.").  Plaintiff provides no support for its assertion that Section 1681m(h)(8) can be circumvented through a claim brought under the FDCPA, and the Court declines to conclude that Section 1681m(g) can be read into the FDCPA on this motion.

authority to be the final arbiter of whether Plaintiff is/is not responsible for the debt." Am. Compl. ¶ 71. And Plaintiff alleges that the Theft Affidavit requires that the affidavit be notarized or witnessed by a non-relative, which is not a requirement under New York law. *Id.* ¶¶ 69–70. However, neither the Letter nor the signature requirements are impermissible under the FDCPA.

First, Plaintiff has not plausibly alleged that the Letter falsely represents that Defendant has the authority to be the final arbiter of whether Plaintiff is responsible for the debt. As Defendant correctly argues, such an assertion is not contained in the Letter. *See* Dkt. No. 23 at 10. It is also not suggested by the plain language or context of the Letter. The Theft Affidavit informs the consumer, in clear language, that information may be shared with law enforcement, suggesting even to the least sophisticated consumer that the debt collector is not the only, let alone *final*, arbiter of whether Plaintiff's identity was stolen and whether Plaintiff is responsible for the debt. *See* Am. Compl. at ECF pp. 21–22. Nor is the assertion that MLG is an arbiter of Plaintiff's identity theft claim necessarily false. As noted, under the FCRA, reporting entities are required to conduct an investigation if a consumer disputes information reported to credit reporting agencies. *See Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150–51 (2d Cir. 2012). Inherent in the requirement that a debt collector subject to the FCRA conduct an investigation into the putative-debtor's claims of identity theft is a requirement that the debt collector draw conclusions based on the investigation. *See* 15 U.S.C. § 1681s-2(b)(1)(C) (requiring an entity that conducts an investigation into a claim of identity theft pursuant to the FCRA to "report *the results of the investigation* to the consumer reporting agency" (emphasis added)). Thus, it would be inconsistent with the statutory scheme for the putative-debtor to be subject to liability under the FDCPA for fulfilling its required role under the FCRA.

Finally, the Theft Affidavit states:  "Please have one witness (non-relative) or notary sign below that you completed and signed this affidavit."[19]  Am Compl. at ECF p. 22.  Plaintiff alleges that the non-relative witness or notarial signature requirement violates Section 1692e(10) because neither is required under New York law.  *See* Am. Compl. ¶¶ 42–43, 69–70.  As an initial matter, it is debatable whether the language of the Theft Affidavit suggests, even to the least sophisticated consumer, that a non-relative witness or notarial signature is required; the language *requests*, but does not command, the putative-debtor to have the affidavit signed by a non-relative witness or a notary and at oral argument, counsel for Defendant represented to the Court that MLG would still "consider the information that's provided" without a notary's or non-relative witness's signature.  Tr. 45.  Even assuming that the Theft Affidavit would be understood by the least sophisticated consumer to require a non-relative witness or notarial signature, Plaintiff does not explain—and the Court cannot discern—how a requirement that the putative-debtor have the Theft Affidavit notarized or signed by a non-relative witness would constitute a "false representation or deceptive means . . . to collect or attempt to collect any debt" under Section 1692e(10).  The signature tells the debt collector no information about the debt that would be helpful in collecting it.  The non-relative witness signature or notarization requirement would help ensure that the information provided by the putative-debtor is accurate, but, as discussed above, the FDCPA does not require a debt collector to facilitate the provision of inaccurate information.  *See supra* p. 18.

---

[19] The Amended Complaint can be read to suggest that the Theft Affidavit has both a notarization requirement *and* a non-relative witness signature requirement.  *See* Am. Compl. ¶¶ 41–42, 69–70.  However, as the plain language of the Theft Affidavit quoted above makes clear, Defendant is requesting that the putative-debtor have the Theft Affidavit notarized *or* provide a non-relative witness signature.

Further, although Plaintiff argues that the non-relative relative or notarization provision violates Section 1692e(10) because it is not *required* under New York law, New York law explicitly contemplates that the victim of an alleged identity theft will submit to a debt collector an affidavit with a non-relative witness's or a notary's signature.  Under New York law, a "principal creditor" is required to cease collection activities on a debt upon receipt of (1) "a copy of a valid police report filed by the debtor alleging that the debtor is the victim of an identity theft crime for the specific debt being collected by the principal creditor," (2) a signed Federal Trade Commission ("FTC") identity theft victim's affidavit with respect to the specific debt being collected by the principal creditor, or (3) "a written statement" that can, *inter alia*, be in the form of "a signed Federal Trade Commission ID theft victim's affidavit."  NYGBL § 604-a(1)–(2).  In turn, the FTC identity theft victim's affidavit mirrors the Theft Affidavit in key respects and has space for a non-relative witness's or notary's signature.[20]  *Compare* Federal Trade Commission, *Identity Theft Victim's Complaint and Affidavit*, at 6 [*hereinafter*, "Identity Theft Complaint and Affidavit"],[21] *with* Am. Compl. at ECF p. 22; *see also* Tr. 12, 46.  The FTC ID theft victim's affidavit is "[a] voluntary form for filing a report with law enforcement, and disputes with credit reporting agencies and creditors about identity theft-related problems."  Identity Theft Complaint and Affidavit, at 1.  And the ID theft victim's affidavit directs the consumer to "[c]heck with each company to see . . . if it requires notarization.  If so, sign in the presence of a notary.  If it does not, please have one witness (non-relative) sign that you

---

[20] The Court can take judicial notice of the Federal Trade Commission's ID theft affidavit because it is a "document[] retrieved from [an] official government website[]."  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (observing that "[c]ourts routinely take judicial notice of such governmental records" (collecting cases)).
[21] A PDF version of the Identity Theft Complaint and Affidavit is available in Federal Trade Commission, *Taking Charge: What To Do If Your Identity Is Stolen* H-1–H-6 (Apr. 2013), available at https://www.justice.gov/usao-wdmi/file/764151/download.

completed and signed this Affidavit."  *Id.* at 6.  Thus, it is perfectly consistent with New York

law that a debt collector would send a consumer a form that requires a non-relative witness or

notarial signature.  There is nothing in the FDCPA that would, as a matter of federal law,

prohibit a debt collector from sending a form to a putative-debtor that New York has decided, as

a matter of its own law, is permissible for the putative-debtor to provide to that very same debt

collector to access the protections afforded to New York residents under New York and federal

law.[22]

Accordingly, Plaintiff has failed to state a claim that the Letter or Theft Affidavit—or

anything within either document—violates Section 1692e(2)(A) or Section 1692e(10).

## CONCLUSION

The partial motion to dismiss the Amended Complaint is GRANTED with prejudice.

Plaintiff does not request leave to replead and does not "identify [any] additional facts or legal

theories that [he] might assert if given the opportunity to replead.  For this reason and because

the Court concludes that any amendment would be futile," the portions of the Amended

Complaint that are the subject of this motion are dismissed with prejudice.  *Wade Park Land

Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 401 (S.D.N.Y. 2022), *amended*, 2022 WL

2479110 (S.D.N.Y. July 6, 2022).

The Clerk of Court is respectfully directed to close Dkt. No. 26.


SO ORDERED.

Dated: July 17, 2023
     New York, New York                    _____
                                                  LEWIS J. LIMAN
                                             United States District Judge

---

[22] Because the Court finds that the Letter and Theft Affidavit do not violate Section 1692e(2)(A) and (10), it is not necessary to analyze the materiality of the alleged violations.