UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/29/2024
```

---------------------------------------------------------------------X
                                             :

WILLIAM R. ROSA, *on behalf of himself and all others similar situated*,       :

                                            :

                        Plaintiff,         :               22-cv-4720 (LJL)

                                            :

              -v-                       :         OPINION AND ORDER

                                            :

MANDARICH LAW GROUP, LLP and JOHN DOES 1-25,      :

                                            :

                    Defendants.     :

---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant Mandarich Law Group, LLP ("Defendant" or "MLG") moves, pursuant to Federal Rule of Civil Procedure 56, for an order granting it summary judgment and dismissing Plaintiff's complaint in its entirety.  Dkt. No. 55.  For the following reasons, the motion is granted.

## BACKGROUND

      The following facts are undisputed except as otherwise stated.[1]

---

[1] In support of summary judgment, Defendant attaches and relies upon an affidavit of Teona Pipia, an attorney with MLG, who testifies as a representative of MLG and a custodian of records at MLG.  Dkt. No. 56-1 ¶¶ 2–6.  Pipia testifies that, after accepting Rosa's file from Cavalry, MLG received documents substantiating the account (including an Affidavit of Facts and Sale of Account by Citibank) and the Citibank application for the Account, account statements and the account Card Agreement.  *Id.* ¶¶ 7–10.  Pipia also testifies to Cavalry's placement of the Account with MLG for collection, the initial collection letter sent by MLG to Plaintiff, the lawsuit brought by MLG on behalf of Cavalry against Rosa, Rosa's answer, MLG's policies with respect to accounts claimed to have been opened via identity theft, and the January 25, 2022 letter that is the subject of this lawsuit. *Id.* ¶¶ 11–22.  She also attaches the relevant documents to her affidavit.  Dkt. Nos.  56-2–54-7.

      Plaintiff argues that the Court should disregard the Pipia affidavit and the assertions that it supports because at her Rule 30(b)(6) deposition, Pipia was unable to identify certain documents that were bates-stamped MLG 118 through 119.  Dkt. No. 58 at 6–8.  Plaintiff also

MLG is a law firm that specializes in creditors' rights.  Dkt. No. 56-1 ¶ 3.  Its clients include Cavalry SPV I, LLC ("Cavalry").  This dispute arises in connection with MLG's efforts to collect on behalf of Cavalry a debt that was owed with respect to an account originally opened with Citibank, N.A. ("Citibank") with an account number ending in 9265 (the "Account").  The Account was opened with Citibank on December 20, 2017 under the name "William R. Rosa." *Id.* ¶ 1.  During the period in which it was active, purchases and payments were made on the Account.  *Id.* ¶ 2.  The account statements show charges for Amazon Prime (in the amount of $13.14), Walmart.com (in the amount of $160.84), and a balance ranging from $6,000 to $9,427, Dkt. No. 56-3 at 17, 20, 23.  Payments ceased and the Account was eventually charged off on March 25, 2020, with a "charge-off" balance of $9,427.70.  Dkt. No. 56-1 ¶¶ 3–4.

On May 28, 2020, the Account was purchased by Calvary.  *Id.* ¶ 5.  On or about October 23, 2020, Calvary placed the Account with MLG for collection.  *Id.* ¶ 6.  MLG received documents substantiating the Account, including purchase and sale documents between Citibank and Cavalry, as well as Account statements and a Card Agreement.  *Id.* ¶ 7; Dkt. No. 56-2.  The documents reflect a charge-off balance of $9,427.70.  Dkt. No. 56-2 at ECF p. 2.  They also

---

argues that the Court should disregard the documents Pipia authenticates because she lacks personal knowledge about the alleged Citibank or Cavalry documents.  *Id.* at 8–10.  That argument is unfounded.  The sham affidavit doctrine applies when a party "who has been examined at length on deposition" attempts to "raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony."  *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) (citation omitted).  The doctrine does not apply here because Defendant does not seek to rely upon the documents as to which Pipia disclaimed knowledge at her deposition.  In addition, Defendant does not rely so much on Pipia's statements as on the business records and court filings she attaches to her affidavit.  But Plaintiff does not dispute the authenticity of those records, nor that they constitute business records and evidence that would be admissible at trial.  Accordingly, regardless of whether Pipia's statements regarding the documents would be admissible, there can be no dispute that the materials themselves can be properly relied upon at summary judgment.  *See* Fed. R. Civ. P. 56(c)(2) (stating that a party asserting that a fact is genuinely disputed may show that the "adverse party cannot produce admissible evidence to support the fact").

reflect that a demand for payment was made by Citibank in connection with the Account and had not been satisfied. *Id.* at ECF pp. 3–4.

On or about December 17, 2020, MLG sent Plaintiff an initial collection letter (the "Initial Collection Letter"). Dkt. No. 56-1 ¶ 8; Dkt. No. 60 ¶ 8. The letter stated that the Account had been sold to Cavalry, that MLG had been hired to collect the balance owed to Cavalry, and that the current balance was $9,427.70. It stated: "This office has been hired to collect the above balance that you owe our client. This is a demand for payment of your outstanding obligation." Dkt. No. 56-4 at ECF p. 2. It further advised:

> Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by us. If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by us.

*Id.* It was signed "Mandarich Law Group, LLP" and bore a license number from the New York City Department of Consumer Affairs. *Id.* It also contained an advisory of rights under the Fair Debt Collection Practices Act ("FDCPA"). *Id.* at ECF p. 3.

On or about February 10, 2021, MLG, on behalf of Cavalry, filed suit against Rosa on the Account in the Civil Court of the City of New York, State of New York, Bronx County, in a case captioned CAVALRY SPV 1, LLC, AS ASSIGNEE OF CITIBANK, N.A. vs. WILLIAM R. ROSA, Case No. CV2207-21/BX (the "Collection Lawsuit"). Dkt. No. 60 ¶¶ 10–11; Dkt. No. 56-5. The summons for the Collection Lawsuit bears the legend: "CONSUMER CREDIT TRANSACTION IMPORTANT! YOU ARE BEING SUED." Dkt. No. 56-5 at ECF p. 2. The complaint recited that Citibank issued "a consumer credit card account" to Rosa, and that Rosa had agreed but failed to make payments on the Account and that $9,427.70 was due and owing on the Account. *Id.* at ECF p.7 ¶¶ 4, 6.

On or about February 26, 2021, Plaintiff filed an answer in the Collection Lawsuit, denying the factual allegations in the complaint and alleging "Plaintiff does not correctly state the amount owed."  Dkt. No. 56-6.

Eventually, MLG received notice that Plaintiff asserted he was a victim of identity theft. Dkt. No. 56-1 ¶ 20.  When MLG receives a claim that an account was opened fraudulently or through identity theft, it places a hold on the account and a fraud packet containing an FTC fraud affidavit and a request for a copy of a filed police report is sent to the debtor.  Dkt. No. 56-1 ¶ 21.

On January 25, 2022, MLG sent a letter (the "Letter").  The Letter was addressed to Plaintiff and sent care of his law firm: Jones, Wolf & Kapasi LLC.  Dkt. No. 56-7 at ECF p. 2.  It is captioned: "RE: CAVALRY SPV I, LLC, AS ASSIGNEE OF CITIBANK, N.A. v. WILLIAM R ROSA Date of Last Payment: August 11, 2019."  *Id.*

The body of the Letter reads as follows:

Dear WILLIAM R ROSA:

You have indicated that you may be the victim of identity theft.  To assist us in our investigation of your claim, please complete and return the enclosed Identity Theft Affidavit and provide a copy of any police report filed by you alleging that you are the victim of an identity theft crime for the account at issue.  Please also provide our office with the following documentation, to the extent such documentation is relevant to your claim of identity theft:

- Copy of your social security card;
- Copy of a valid state identification card or valid driver's license;
- Proof of residency when the account was incurred.

If you have any questions, feel free to contact Collection Supervisor, Keith Gibbons, of our office toll-free at 833.769-.2757.

This communication is from a debt collector.

Thank you.

*Id.*  The Letter is signed by Mandarich Law Group, LLP and bears the following legend at the bottom: "NEW YORK CITY DEPARTMENT OF CONUMER AFFAIRS LICENSE NUMBER 2079588-DCA."  *Id.*

The Letter attached an ID Theft Affidavit and a Fraudulent Account Statement.  The ID Theft Affidavit called for the recipient to check off boxes regarding "How the Fraud Occurred" and the "Victim's Law Enforcement Actions" and to provide a copy of a valid government-issued photo identification card, proof of residency during the time the disputed bill occurred, and a copy of any report filed with the police or with a sheriff's department, and asked for the Affidavit to be signed with a certification that the signatory understood that "knowingly making any false or fraudulent statement or representation to the government may constitute a violation of 18 U.S.C. § 1001 or other federal, state, or local criminal statutes, and may result in imposition of a fine or imprisonment or both."  *Id.* at ECF pp. 3–6.  The Fraudulent Account Statement asked for the recipient to list the accounts that were opened in the recipient's name without his knowledge, permission, or authorization.  *Id.* at ECF p.7.

Plaintiff received a copy of the Letter from his attorneys.  Dkt. No. 60 ¶ 20.  He did not respond to the letter.  *Id.* ¶ 21.  Instead, on June 6, 2022, Plaintiff filed this lawsuit.  *Id.* ¶ 22.

## PROCEDURAL HISTORY

The complaint in this case was filed on June 6, 2022.  Dkt. No. 1.  Plaintiff filed an Amended Complaint on September 21, 2022.  Dkt. No. 21.  Plaintiff brings claims on behalf of himself and a class defined "all New York consumers who were sent letters or notices from MLG, which included the alleged conduct and practices described herein."  *Id.* ¶ 13.  Plaintiff alleges Defendant made false, deceptive, and misleading representations and statements in violation of the FDCPA.  In particular, Plaintiff claims that the Letter violated Section 1692e(2)(A) of the FDCPA because (1) Plaintiff is not responsible for the obligation under the

Account, (2) there is no notarization requirement under Section 604 of the New York General Business Law ("GBL"), (3) the Letter falsely claimed that Defendant had the authority to be the final arbiter of whether Plaintiff was responsible for the debt, (4) the Letter placed undue burdens on Plaintiff not permitted or contemplated by the Fair Credit Reporting Act, and (5) the Letter falsely represented the character, amount and legal status of the debt. *Id.* ¶¶ 58–63. Plaintiff also claim that Defendant violated Section 1692e(10) of the FDCPA in the same respects. *Id.* ¶¶ 67–573.  And Plaintiff claims that Defendant violated Section 1692f and 1692f(1) of the FDCPA by using unfair and unconscionable means to collect a debt, because Plaintiff did not owe the amount under the Account.  *Id.* ¶¶ 74–84.

On July 17, 2023, the Court issued an Opinion and Order granting Defendant's partial motion to dismiss the Amended Complaint.  Dkt. No. 42.  The Court dismissed Plaintiff's claims that Defendant (1) created the false impression that the Defendant was affiliated with the United States in violation of Section 1692e(1) and that a government body or agency was the source of the Letter and Theft Affidavit in violation of Section 1692e(9).  *Id.* at 13–20.  The Court also rejected Plaintiff's claim that by requesting that the consumer complete the Theft Affidavit and have it either notarized or signed by a non-relative witness, the Theft Affidavit misleads consumers as to the character and legal status of the debt and falsely represents that Defendant has the authority to be the final arbiter of whether Plaintiff is or is not responsible for the debt in violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(10).  *Id.* at 21–32.

Defendant filed this motion for summary judgment on October 20, 2023, as well as an accompanying memorandum of law, a Rule 56.1 Statement, and the affidavit of Teona Pipia, attaching documents.  Dkt. Nos. 55–57.  Plaintiff filed a memorandum of law in opposition, a response to Defendant's Rule 56.1 statement, and the declaration of Benjamin J. Wolf, on

November 1, 2023.  Dkt. Nos. 58–61.  On November 8, 2023, Defendant filed a reply

memorandum of law and a response to Plaintiff's Rule 56.1 statement.  Dkt. Nos. 62–63.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' for

these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n

issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'"  *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether

there are any genuine issues of material fact, the Court must view all facts "in the light most

favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008),

and the movant bears the burden of demonstrating that "no genuine issue of material fact exists,"

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation."

*FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

To survive a summary judgment motion, the non-moving party must establish a genuine

issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A);

*see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  It "cannot defeat the motion by

relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. Of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted), but rather must demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 247–48. The nonmoving party must set forth "concrete particulars" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Rsch. Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

Defendant's motion presents three questions in descending order: whether a reasonable jury could find: (1) the debt at issue is a consumer debt under the FDCPA; (2) the Letter is a communication covered by the FDCPA; and (3) assuming the debt is a consumer debt and the Letter is a communication, MLG violated the FDCPA by using false, deceptive, or misleading representations or means to collect a debt. Although the questions are close, the Court concludes there is sufficient evidence that the debt is a "consumer debt" under the FDCPA and the Letter is a "communication" covered by that statute. However, there is no evidence from which a reasonable jury could conclude that MLG violated the FDCPA.

## I.      Consumer Debt

Defendant argues first that Plaintiff cannot establish the threshold requirement under the FDCPA that the debt sought to be collected arose from a transaction incurred primarily for personal, family, or household purposes.  Dkt. No. 56 at 7.

Section 1692e makes it unlawful for "[a] debt collector . . . [to] use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  However, the statute does not cover every "debt" that a consumer might incur.  The statute "'applies only in instances where a debt collector attempts to collect a "debt" within the meaning of the Act.'"  *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) (summary order) (quoting *Degrossiellier v. Solomon & Solomon, P.C.*, 2001 WL 1217181, at *3 (N.D.N.Y. Sept. 27, 2021)).  The statute defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment," 15 U.S.C. § 1692a(5), and defines "consumer" to mean "any natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3).  By the statute's plain language, it is not sufficient that the plaintiff be a natural person or even a consumer obligated to pay a debt.  *See Paushok v. Ganbold*, 2022 WL 1421844, at *2 (2d Cir. May 5, 2022) (summary order).  The debt must arise from certain types of transactions—those in which "the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5); *see Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 83 (2d Cir. 2018) ("'[W]hether an obligation is a "debt" depends . . . upon the purpose for which it was incurred.'" (quoting *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013)).  "The FDCPA does not cover 'actions arising out of

commercial debts.'" *Scarola Malone & Zubatov LLP*, 638 F. App'x at 102 (quoting *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006)).

The statutory term "debt" includes "alleged obligations" to pay money as well as actual obligations to pay.  15 U.S.C. § 1692a(5).  Accordingly, the FDCPA's protections apply to a non-debtor if she can show that the defendant alleged that she owed a debt, regardless of whether the debt was one incurred by the plaintiff herself.  *See Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572 (7th Cir. 2019); *Loja v. Main Street Acquisition Corp.*, 906 F.3d 680, 683–84 (7th Cir. 2018); *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011) ("[W]e read § 1692a(3) to include individuals who are mistakenly dunned by debt collectors."); *Gendelberg v. Warfield*, 2021 WL 1224831 at *5 (E.D.N.Y. Mar. 31, 2021); *cf. Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012) (stating that the legislative history of the FDCPA demonstrates Congress intended to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid" (quoting S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699)).

The courts have divided, however, on the showing that an identity-theft victim must make to establish that the debt she never incurred was a consumer debt under the FDCPA.  The Seventh Circuit has held that a plaintiff who claims a debt was not his "still must offer evidence to establish that the *debt* was a consumer debt."  *Burton*, 934 F.3d at 580.  That court held the following evidence to be insufficient to give rise to a genuine issue that a debt arose from a consumer transaction: (1) the plaintiff's "bald assertion" that the debt arose from a consumer transaction; (2) the defendant's "treatment of the debt as a consumer debt" in its collection efforts; and (3) the defendant's marketing activities describing their debt collection services.  *Id.* at 581–82.  "[W]hat matters is the actual charges made that incurred the debt, not necessarily the

original credit agreement." *Burton v. Kohn L. Firm S.C.*, 2018 WL 1785495, at *5 (E.D. Wis. Apr. 13, 2018), *aff'd*, 934 F.3d 572.  Other courts have taken a similar approach to the Seventh Circuit by requiring evidence about the specific debt-incurring charges' purpose.  *See Sanders v. CACH, LLC*, 2023 WL 2019619, at *5 (D.N.J. Feb. 15, 2023); *Koger v. Midland Credit Mgmt., Inc.*, 2020 WL 13680494, at *2 (W.D. Mo. Sept. 25, 2020) (granting summary judgment where "plaintiff states in the affidavit that the debt is not hers, but she offers no evidence that the debt qualifies as a consumer debt"); *Horton v. Trans Union, LLC*, 2015 WL 1055776 (E.D. Pa. Mar. 10, 2015) (holding that evidence of the debt collector's course of conduct was insufficient); *Toroussian v. Asset Acceptance, LLC*, 2013 WL 5524831 (C.D. Cal. Oct. 4, 2013) (holding that evidence a credit card was opened at a retail bridal shop was insufficient); *Anderson v. AFNI, Inc.*, 2011 WL 1812496 (E.D. Pa. May 11, 2011) (holding that evidence of the debt being associated with a residential address and the debt collector's course of conduct was insufficient). But even as these courts focus on the subjective intent of the transactions, the Seventh Circuit has nonetheless held that so long as "*a reasonable inference*" can be drawn "that [the debt] was undertaken 'for personal family, or household purposes,'" the plaintiff has satisfied her burden under the FDCPA.  *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 548–49 (7th Cir. 2022) (emphasis added).

Other courts, however, consider "the transaction as a whole," holding that a wider range of evidence is sufficient to establish the consumer nature of the debt.  *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (quoting *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980)).  Recognizing that "it would be absurd to hold that [a victim of identity theft] is ineligible for the FDCPA's protections simply because she cannot characterize the nature of the debt obligation," *Franks v. Achievable Sols., Inc.*, 2021 WL 3884281, at *3 (C.D. Cal. Jan. 29, 2021),

these courts look beyond the subjective intent motivating specific transactions to other factors. "[A] victim of identity theft or mistaken identity need not present evidence of the intent or purpose of an unknown person in entering the transaction, but should present evidence of the identity theft or mistaken identity along with some evidence showing that the debt is consumer in nature." *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1306 (S.D. Fla. 2016).  One such piece of evidence is "that the account [from which the charge was incurred] was a consumer rather than business account." *Id.*; *see also Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 838–39 (11th Cir. 2010) (considering how the plaintiff's Paypal account was for personal uses and business uses were not permitted); *Collins v. Portfolio Recovery Assocs., LLC*, 2013 WL 9805805 (E.D. Tenn. June 7, 2013) (denying a motion for summary judgment where the plaintiff provided evidence that the credit card was a consumer card); *Tower*, 625 F.2d at 1166 (considering "the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature).  For these courts, looking at "all relevant factors" also includes the debt collector's conduct and whether they treat the debt as consumer debt.  *See Soria v. U.S. Bank N.A.*, 2019 WL 8167925, at *10 (C.D. Cal. Apr. 25, 2019).

In the Second Circuit, simply because "a disputed debt never actually existed and collection efforts were targeted at an individual" does not mean the debt should automatically be deemed personal rather than commercial.  *Scarola*, 638 F. App'x at 103.  The Second Circuit reasoned that such an argument "contradicts the plain language of the statute by attempting to define 'consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt.'"  *Id.* (quoting *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1076 (9th Cir. 2001)).  A court in this Circuit has permitted an FDCPA claim to go forward where the plaintiff

alleged that the defendant attempted to collect a debt the plaintiff never incurred in connection with the shipment of an air conditioner she never purchased, because the charge was made on a Home Shopping Network card in the plaintiff's personal name and not in a corporate name, the plaintiff's prior purchases on that card were for what appeared to be household items, and the plaintiff's personal ownership of two air conditioners suggested that the charge fell into the personal or household use category. *Gendelberg*, 2021 WL 1224831, at *5. Another court in this Circuit, without deciding the issue, has suggested that in the case of a plaintiff being dunned based on a mistaken identity, evidence that the alleged debtor was an individual and not a business, that the debt was for a small amount, and that the address associated with the account was residential were all supportive of the contention that the debt at issue was personal. *See Thomas v. Law Offs. of Steven Cohen, LLC*, 2024 WL 21547 (W.D.N.Y. Jan. 2, 2024).

In addressing Defendant's motion and the proof required to create a genuine issue of fact whether an alleged debt is consumer or commercial, the Court finds the analysis of Judge Korman in a related context in *Nicolaides v. Divine and Service, Ltd.*, 382 F. Supp. 3d 251 (E.D.N.Y. 2019), to be particularly helpful. The court there rejected the claim that a debt incurred after the plaintiff used a corporate credit card impermissibly for personal expenses fell within the definition of a consumer "debt" under the FDCPA. Reasoning by analogy from Judge Posner's decision for the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 874–75 (7th Cir. 2000), that a mortgage taken out to finance a personal residence does not become a commercial debt when the property at issue is later converted to business purposes, Judge Korman held that the relevant question under the FDCPA was whether at the time the credit card issuer agreed to extend credit to the borrower (i.e., the account's origination), that extension of credit was understood to be for business or for personal

purposes, and that such question was addressed by "the terms of the credit agreement to evaluate the nature of [the] transaction." *Nicolaides*, 382 F. Supp. 3d at 257.  The court acknowledged that there was a difference between a mortgage loan and a credit card transaction because, in the latter, "[n]o money is owed at the moment the account is opened." *Id.*[2]  But the court nonetheless held that the two situations were analogous: "[J]ust as the original creditor of a loan 'is more likely to know whether the debt was personal or commercial at its incipience than either the creditor or the debt collector is to know what current use the debtor is making of the loan,' a credit card issuer cannot foresee a cardholder's future misuse in violation of the terms of the agreement." *Id.* (quoting *Miller*, 214 F.3d at 875).  The court held, "[i]n evaluating a credit card transaction, the cardholder's intent behind specific purposes must therefore be subordinated to a contrary purpose articulated in the credit agreement." *Id.*[3]; *see also Vasilakos v. Blitt & Gaines, P.C.*, 2013 WL 4047634, at *3 (N.D. Ill. Aug. 8, 2013) (holding that debt incurred on a business credit card for personal purchases was not consumer debt because "the transaction in which [plaintiff] obtained the card and became obligated to pay was a business transaction, not a personal or household transaction").

Judge Korman's approach is consistent with the FDCPA read as a whole.  *See Jerman v. Carliste, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587–88 (2010).  The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those

---

[2] Judge Posner's opinion has not been limited to mortgage loans.  *See, e.g.*, *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1 (D. Mass. 2012) (charges to a condominium association).

[3] Judge Korman noted that while the Second Circuit had previously found that the statute required the debt to arise as a result of the rendition of a service or the purchase of property or other items of value, "it has not held that the purpose of a credit card transaction must be discerned from the cardholder's subjective intent at the time of purchase and not the credit card agreement." *Id.* at 256 n.1.

debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692; *see Jerman*, 559 U.S. at 577; *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 n.9 (2d Cir. 1998). The FDCPA's text "focuses primarily, if not exclusively on the conduct of the debt collectors, not debtors," and numerous provisions of the law are directed to the nature of the credit agreement between creditor and debtor, from which the debt obligation arises. *See Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Given the FDCPA's broad remedial purpose, it would be anomalous if a debt collector who has every reason to believe that the transaction out of which the debt arises is for personal purposes could escape liability on the fortuity that, because the card was stolen, the cardholder cannot prove for certain whether the underlying charge was subjectively for a personal or business purpose. *See Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer." (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002))). It is thus entirely consistent with the statutory scheme that the debt collector's obligations as well as the debtor's rights would turn, at least in part, on the terms of the credit agreement as one factor in examining "the transaction as a whole." *Martin*, 192 F. Supp. 3d at 1306 (quoting *Bloom*, 972 F.2d at 1068–69).

*Nicolaides* is not quite on all fours with respect to the question presented in this case, which involves the evidence necessary to demonstrate that an obligation is a consumer debt. Judge Korman himself recognized that somewhat different considerations might apply when commercial purchases are made on a personal credit card, stating that he did not "necessarily part ways" with those cases concluding that such commercial purchases are excluded from the protection of the FDCPA. *Id.* at 258. He stated that "[f]or a personal credit card account,

examining the owner and terms of the credit card agreement may not suffice to determine the nature of the debt," particularly if the agreement "might lack restrictions on card usage." *Id.* Nonetheless, the decision is instructive. *Nicolaides* reasons that a debt collector may fairly presume when a cardholder makes a charge on a card limited to business purposes that the charge is for a business purpose. By the same token, when a charge is made on a personal card, the card issuer would have reason to infer that the charge is a personal one. And, if the card issuer draws that inference, so could a jury. *Cf. Mutual Life Ins. Co. of N.Y. v. Hillmon*, 145 U.S. 285, 295–96 (1892). Conversely, where evidence of the actual reason for the purchase is unavailable to the plaintiff and the defendant alike, no inference can be drawn from the failure to produce such evidence that the purchase was not personal. *See* Sand's Federal Jury Inst. 75-4 (Uncalled Witness Equally Available).

The *Nicolaides* court's discussion of the practical and textual questions presented with respect to the subjective after-the-fact intent of the cardholder who misuses a line of credit seems equally applicable to questions regarding the intent of the misappropriator of the line of credit. Rejecting the view that the parties to an FDCPA lawsuit "sift[] through each corporate credit card purchase to divine which really may be for personal, family, or household usage," Judge Korman reasoned that it would be "hard to imagine that Congress intended creditors and debt collectors to scour commercial accounts for any whiff of misuse." *Id.* at 256. Instead, an approach that looked to the parties' intent at the time the line of credit was extended, rather than to the actual use of that line of credit when it was misused, "better comports with the purpose of the FDCPA, limits uncertainty, and avoids unfairness." *Id.* at 257. Likewise, in the context of identity theft and misappropriation of a line of credit, it would be hard to imagine that Congress intended the consumer who is the victim of misleading practices in connection with an alleged

obligation to demonstrate the purpose of a purchase he or she never made.  Requiring these plaintiffs "to prove the nature of the obligation being sought would have precisely the opposite effect" than that sought by the FDCPA.  *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 926 (E.D. Cal. 2014).  In such a circumstance, where the line of credit has been extended for personal purposes but has been misappropriated by a third party, the purposes of the FDCPA and the interests of certainty and fairness are served by a test that looks to the parties' intent at the time the credit was extended and to the credit card agreement, at least in circumstances where the personal purpose of the underlying purchases is not entirely clear based on other evidence.

 Applying the foregoing analysis, it readily follows that triable issues of fact exist here. The card agreement was for personal use and prohibits the user from using the account for business purposes. It states:

> **ACCOUNT USE**
>
> **Consumer Purposes.**  You aren't permitted to use your Account for business purposes.  If you do use your Account for business purposes, this Agreement still applies, and you must pay us for those Transactions.  You may also have to pay us for any damages and/or expenses resulting from that use.  In addition, we may close your Account.

Dkt. No. 56-3 at 41.

 If more is needed, it exists.  Plaintiff need not rely on Defendant's labeling of the debt as a "Consumer Credit Transaction" in the summons for the collection case and Defendant's efforts to comply with the New York Civil Practice Law and Rules and the Uniform Rules for the New York City Civil Court for consumer debt.  Dkt. No. 58 at 13–14.  The Second Circuit has foreclosed consideration of the debt collector's conduct in determining the nature of the debt. *Scarola*, 638 F. App'x at 103.

 Here, however, in addition to the account being a consumer account, the charges on the account are consistent with the card being used for consumer purposes.  The vast majority of

transactions on the card were for small amounts—less than $200—at retailers such as Walmart and Amazon.  Dkt. No. 56-3 at 23.  In addition, a recurring monthly transaction on the account was $13.14 for Amazon Prime, consistent with consumer use.  Dkt. No. 56-3 at 14, 17.  The relatively small charge-off balance of $9,427.70 is also consistent with consumer rather than commercial use.  Dkt. No. 60 ¶ 4.

Moreover, the account holder is an individual with an address tied to the account that appears to be residential.  Dkt. No. 56-2 at 9. Finally, Plaintiff swears and is prepared to offer evidence that, other than a third-party account without a balance, he has never had a business checking or savings account, and through his employment at the Metropolitan Transit Authority, he has never made purchases for that agency.  *Id.* ¶¶ 3–4(counterstatement).

Considering all relevant factors and viewing the transaction as a whole, a "reasonable inference" can be drawn that the debt was incurred for consumer rather than business purposes.  *Woods*, 27 F.4th at 549.  Plaintiff has established that a genuine issue of material fact exists as to the consumer nature of the debt.

## II.    FCPA Communication

Defendant next argues that the Letter is not a "communication" covered by the FDCPA because it was sent to Plaintiff's counsel of record and not to Plaintiff himself.[4]  Dkt. No. 56 at 15–16.  Plaintiff responds that a reasonable jury could conclude to the contrary because the letter was sent to Plaintiff by care of his attorney, the salutation was addressed directly to Plaintiff, and the contents of the letter relate to the collection of a debt.  Dkt. No. 58 at 14–15.

---

[4] "[T]he FDCPA's definition of 'debt collector' includes lawyers who regularly, through litigation, attempt to collect consumer debts."  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 593 (2010) (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (holding that the FDCPA "applies to the litigating activities of lawyers")); *see also Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 137 (2d Cir. 2017) ("[D]ebt collectors do not have immunity from FDCPA liability for their litigation conduct.").

Section 1692a(2) defines the term "communication" "very broadly." *Romea*, 163 F.3d at 114 n.2.  It means "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).  It is therefore sufficient that a letter convey "information regarding a debt" to a person other than the one subject to the debt collection. *Romea*, 163 F.3d at 116.

Defendant relies on authority that states that "communications directed at a debtor's *attorney*, rather than the debtor herself, are excluded from the purview of the FDCPA." *Walsh v. L. Offs. of Howard Lee Schiff, P.C.*, 2012 WL 4372251, at *6 (D. Conn. Sept. 24, 2012); *id.* at *7 (false statements directed solely to plaintiff's counsel "fall outside the strictures of section 1692e"); *see also Vernot v. Pinnacle Credit Servs., L.L.C.*, 2017 WL 384327, at *5 (E.D.N.Y. Jan. 26, 2017) (Bianco, J.) ("[T]he protections of the FDCPA do not apply to communications made by debt collectors to attorneys rather than consumers and, therefore, plaintiff's claim lacks merit because it is based on a communication made to an attorney, not a consumer."). *See* Dkt. No. 56 at 15.  Defendant argues from that language that communications directed to a consumer but routed through a lawyer are categorically excluded from the FDCPA's scope. *Id.*

The statutory language of the FDCPA and its purposes, however, are inconsistent with the categorical exclusion of transmissions to counsel from the definition of "communication." Neither Second Circuit authority nor the cases relied upon by Defendant support a conclusion that would read out communications to attorneys from the scope of the statute.  The Court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (citations omitted); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 516 (S.D.N.Y. 2018) ("Where . . . a broad statute has a plain and unambiguous meaning, it ought to be interpreted broadly.").  Here, the plain text of the statute

does not admit of any exceptions based on the identity of the recipient.  The statute uses the word "any" twice to cover "the conveying of information regarding a debt directly *or indirectly* to *any* person through *any* medium."  15 U.S.C. § 1692a(3).  That word has an expansive meaning; on its own, it does not admit of exceptions.  *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("[R]ead naturally, the word 'any' has an expansive meaning."); *Ali v. Fed. Bur. of Prisons*, 552 U.S. 214, 219 (2008) ("[T]he expansive word 'any' and the absence of restrictive language [leaves] 'no basis in the text for limiting' the phrase." (quoting *Gonzalez*, 520 U.S. at 5)); *Harrison v. PPG Indus., Inc.*, 446 U.S. 578 (1980) (interpreting a statute using the word "any" broadly).  Likewise, the language "indirectly" conveys that the information need not be communicated immediately to the consumer but can be transmitted through an intervening person.  *See Chevron U.S.A., Inc. v. United States*, 110 Fed. Cl. 747, 788 n.30 (2013) (defining "indirectly" as "'[b]y indirect action, means, connexion, agency, or instrumentality; *through some intervening person or thing*; mediately." (quoting *Indirectly*, 7 Oxford English Dictionary 873 (2d ed. 1989) (emphasis added))).

The conclusion that the statutory term "communication" includes communications with an attorney is supported by the statute as a whole.  The substantive provisions of the FDCPA that are directed to abusive, misleading, or unfair or unconscionable conduct "do not designate any class of persons, such as lawyers, who can be abused, mislead, etc., by debt collectors with impunity."  *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007).  Indeed, other provisions of the FDCPA indicate that "communication" should be read broadly.  For example, Section 1692c(b), in a section headed "communication with third parties," proscribes the persons with whom the debt collector may have a communication regarding a consumer's debt, but excepts from that limitation communications with the consumer's lawyer.

15 U.S.C. § 1692c(b).  That exception would be unnecessary if communication with the consumer's lawyer were already categorically excluded from the definition of communication. Likewise, Section 1692g sets forth the notice that must be provided after the initial communication with a consumer.  15 U.S.C. § 1692g(a).  That provision too, and the time limits in it, would be rendered nonsensical if a communication with the consumer's attorney could not constitute an initial communication.  More generally, the Supreme Court has held that the FDCPA is violated when a debt collector sends a letter misrepresenting the amount of a debt to a consumer's lawyer.  *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995).  Although the Supreme Court in *Heintz* did not expressly address the definition of "communication," its holding is inconsistent with the notion that transmissions to an attorney are categorically excluded from those communications addressed by the FDCPA.

Thus, the Court agrees with Judge Posner that, while it may be true that a lawyer is "less likely to be deceived, intimidated, harassed, and so forth . . . than a consumer, . . . that is an argument not for immunizing practices forbidden by the statute when they are directed against a consumer's lawyer, but rather for recognizing that the standard for determining whether particular conduct violates the statute is different when the conduct is aimed at a lawyer than when it is aimed at a consumer."  *Evory*, 505 F.3d at 775.[5]

---

[5] By the Court's count, at least the Third, Fourth, Sixth, Seventh, and Eleventh Circuits have all held that the FDCPA encompasses communications made to a consumer's lawyer.  *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232–33 (4th Cir. 2007); *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889 (6th Cir. 2020) (presupposing that a debt collector's communication to a state court clerk fell under the FDCPA); *Evory*, 505 F.3d at 775; *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1272 (11th Cir. 2016); *see also Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012) (declining to adopt a blanket rule that communications to debtor's counsel can never violate the conduct-regulating provisions of the FDCPA because "[d]ebt collector lawyers make representations to debtors' attorneys in a wide variety of situations").

The Second Circuit has not held otherwise.  Defendant cites to Second Circuit dicta suggesting that "alleged misrepresentations to attorneys for putative debtors cannot constitute violations of the FDCPA." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002); *see also id.* (emphasizing that this view was "not dispositive to our holding").  Plaintiff also cites to a nonprecedential summary order by the Second Circuit relying on *Kropelnicki* to hold that "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, [the court] assume[s] the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012) (summary order) (quoting *Kropelnicki*, 290 F.3d at 128).  However, the decision in *Kropelnicki* did not turn upon an interpretation of the word "communication" but rather on the court's conclusion regarding the kinds of communications that are substantively misleading under Section 1692e.  As for *Gabriele*, the Second Circuit there reaffirmed its prior rulings that "statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA." *Id.* at 95 (citing *Goldman*, 445 F.3d at 157 (holding that a summons and complaint can constitute an "initial communication" under the FDCPA)).  The case thus cannot be read to categorically exclude transmissions to lawyers from the definition of "communication."  Indeed, following *Gabriele*, the Second Circuit has reiterated "that debt collectors can be subject to FDCPA liability based on actions taken in legal proceedings." *Cohen*, 897 F.3d at 83–84.  In any event, nonprecedential orders and "dicta are not and cannot be binding." *Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir. 2006).  Since *Kropelnicki*, the Second Circuit has reemphasized that it has "not [yet] ruled on whether an FDCPA claim may be brought for misrepresentations made to third parties," such as

counsel.  *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 97 n.6 (2d Cir. 2015).  Thus, it is within the Court's purview to arrive at its own conclusion.

Finally, the remaining cases cited by Defendant do not require the Court to accept Defendant's categorical claim.  In *Walsh*, the communications alleged to have violated the FDCPA consisted of motions, objections, and discovery requests filed or served in connection with a debt collection lawsuit that were alleged to contain procedural defects.  2012 WL 4372251, at *6.  Before reaching the question of communications to counsel, the court rejected plaintiff's claim because the allegedly false and misleading statements were "immaterial to the amount, character, or validity of the debt."  *Id.*[6]  In *Vernot*, likewise, the court concluded that the statements challenged by plaintiff were neither materially false or misleading under Section 1692e nor unfair or unconscionable under Section 1692f before going on to discuss the general issue whether communications by debt collectors to attorneys were covered by the FDCPA.[7] 2017 WL 384327, at *5.  Accordingly, in neither *Walsh* nor *Vernot* was the court's language with respect to communications to attorneys necessary to the decision.

Plaintiff has proffered sufficient evidence to satisfy the threshold requirement that a "communication" was made under the FDCPA.  Defendant directed the Letter to Plaintiff by

---

[6] *Walsh* cites to several other cases in the Circuit but each of them is arguably dicta or can be explained on the basis that the communication at issue was not materially misleading.  *See Gabrielle v. L. Off. of Marth Croog*, 2012 WL 460264, at *2–3 (D. Conn. Feb. 9, 2012) (rejecting FDCPA claim based on alleged misrepresentations in pleadings and litigation misconduct because statements made "within the legal context of litigation" were not misleading to the plaintiff who was represented by counsel); *Tomba v. M.R.S. Assocs., Inc.*, 323 F. Supp. 2d 424, 426 (E.D.N.Y. 2004) (facsimile sent to counsel for debtor did not concern the debt but instead inaccurately described the sender as a "Senior Legal Associate"); *Boyd v. J.E. Robert Co.*, 2010 WL 5772892 (E.D.N.Y. Mar. 31, 2010) (dicta).

[7] The court in *Vernot* also concluded that when the communication at issue was made to an attorney, the relevant question was whether "defendant's statements would . . . be materially misleading to a competent lawyer."  2017 WL 384327, at *6.

care of his attorney and it concerned the contested debt.  Dkt. No. 56-7, at ECF p. 2.  Moreover, the Letter's salutation was addressed to Plaintiff and required him—not counsel—to provide information and complete the attached forms.  *Id.* at 2–7.  Based on this evidence, a jury could find that Section 1692a(2) is satisfied.

## III.    Violation of FDCPA's Conduct-Regulating Rules

Finally, Defendant argues that Plaintiff has adduced insufficient evidence from which a reasonable jury could find that it violated the FDCPA's substantive provisions.  Plaintiff alleges Defendant violated Sections 1692e and 1692f.  Defendant's arguments have merit.

### A.    Section 1692e

Plaintiff alleges that Defendant violated Sections 1692e(2)(A) and 1692e(10) of the FDCPA by sending the Letter because Plaintiff is not responsible for the Account.  Dkt. No. 21 ¶¶ 58, 68.  Section 1692e makes it illegal for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Section 1692e(2)(A) makes it unlawful for a debt collector "in connection with the collection of any debt" to make a "false representation of the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Section 1692e(10) makes it unlawful for a debt collector "in connection with the collection of any debt" to use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  Defendant argues that Plaintiff cannot satisfy the threshold requirement to show the Letter was sent in connection with the collection of a debt.  Defendant further argues that, even assuming the Letter was sent in connection with the collection of a debt, it did not violate Section 1692e(2)(A) because it did not contain a false representation of the character, amount, or legal status of a debt, Dkt. No. 56 at ECF pp. 9–10, and that it did not violate Section 1692e(10) because the Letter did not state that Plaintiff was responsible for the Account but

rather acknowledged that he might be the victim of identity theft and asked for information to assist Defendant in investigating Plaintiff's claim, *id.* at 10–12.

Under Section 1692e, "FDCPA liability is defined . . . in terms of whether the debt collector's communication with the consumer is *in connection with* that consumer's obligation to pay money." *Cohen*, 897 F.3d at 83. Whether a communication satisfies this threshold requirement is "an objective standard" that considers whether a consumer "could reasonably interpret [the communication] as being sent 'in connection with the collection of [a] debt.'" *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (citing *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009)). The primary purpose of a communication need not be to collect upon a debt as long as the communication is made "at least in part to induce" the debtor to pay a debt allegedly owed. *Romea*, 163 F.3d at 116. In addition, "a communication need not contain an explicit demand for payment to constitute debt collection activity." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014). It suffices that a communication is "part of a dialogue to facilitate satisfaction of the debt," *id.* at 246, or "aims to make [a collection attempt] more likely to succeed," *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 266 (3d Cir. 2013) (citations omitted). At the summary judgment stage, the Court considers whether "a reasonable jury could . . . find that an animating purpose of the statements was to induce payment." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011).

A jury could reasonably conclude here that the Letter was "in connection with the collection of any debt." 15 U.S.C. § 1692e. Although the Letter does not on its face seek payment of a debt, it was plainly made in connection with an ongoing debt-collection effort. The Letter's subject line provides the case name for the debt-collection case commenced against Plaintiff and signals that the request for identity-theft information was being made in connection

with the debt collection.  Dkt. No. 56-7 at ECF p. 2.  The Letter also indicates that it was a continuation of previous communications between Plaintiff and Defendant regarding the debt collection because it says to Plaintiff, "You have indicated that you may be the victim of identity theft."  *Id.*  Moreover, the Letter states "[t]his communication is from a debt collector," includes the contact information for a "Collection Supervisor," and includes Defendant's New York City debt-collection license number.  *Id.*  It seeks information from the recipient, including an Identity Theft Affidavit and a copy of any police report.  A recipient who was not herself a victim of identity theft or who decided not to pursue a claim of identity theft would understand that the obligations of the letter could be discharged by paying the underlying debt.  That Plaintiff himself maintained his claim to have been a victim of identity theft does not make the communication any less one made in connection with the collection of a debt.  A reasonable jury could find that Section 1692e is applicable to the Letter as part of a dialogue to satisfy the debt or as an attempt to make the collection attempt more likely to succeed.

Plaintiff alleges that Defendant's Letter violated Section 1692e(2)(A)'s prohibition against "false representation[s] of . . . the character, amount, or legal status of any debt" because the Account does not belong to Plaintiff.  15 U.S.C. § 1692e(2)(A); Dkt. No. 21 ¶ 58.  "Character" in the statutory language refers to "the kind of obligation" the debt is, including "the genesis, nature, or priority of the debt."  *Rhone v. Med. Bus. Bureau, LLC*, 915 F.3d 438, 440 (7th Cir. 2019).  Few courts have discussed the definition of "character" or "legal status" under Section 1692e(2)(A), but those courts that have addressed their meaning typically consider "whether the debt itself is collectable, for example, if it is barred by a statute of limitations or owed by someone else, or what comprises the debt, for example if the debt includes non-

recoverable fees." *Heffington v. Gordon Aylworth & Tami, P.C.*, 2018 WL 3763799, at *5 (D. Or. Aug. 8, 2018) (collecting cases).

No reasonable jury could conclude that the Letter here is a false representation of the character, amount, or legal status of the disputed debt.  "The hypothetical least sophisticated consumer . . . is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).  "[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice [or a communication] with some care." *Cloman v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).  Moreover, the least sophisticated consumer is expected to read the communication as a whole. *Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008) ("Even the least sophisticated debtor is bound to read [communications] in their entirety."); *Rubin v. Montefiore Med. Ctr.*, 2021 WL 4538603, at *1 (2d Cir. Oct. 5, 2021) (summary order); *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 238 (2d Cir. 1998) (examining the communication "as a whole"); *McStay v. I.C. Sys.*, 308 F.3d 188, 191 (2d Cir. 2002); *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 510 (6th Cir. 2007); *Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th Cir. 2002). Reading the communication in its entirety, even the least sophisticated consumer—"particularly represented by counsel," *Gabriele*, 503 F. App'x at 95—could not understand the Letter in context to convey the misleading message that Defendant was claiming the debt was owed by Plaintiff or Defendant was seeking to collect a debt from a person who did not owe it.  The Letter begins with the acknowledgement that Defendant understands that Plaintiff is claiming to be "the victim of identity theft" and seeks information to assist in Defendant's "investigation of your claim."  Dkt. No. 56-7 at ECF p. 2  It does not state explicitly or implicitly that the Defendant is seeking to collect the debt.  It seeks the kind of information that an investigator would

customarily seek in connection with an investigation—information regarding how the fraud occurred, the victim's law enforcement actions, and a copy of any police report.  Tellingly, although the Letter contains the date of late payment, the Letter does not state the amount of a debt that is due or provide information regarding where Plaintiff can pay it.

The Court's conclusion is influenced by the fact that the Letter is sent to Plaintiff's counsel from counsel and bears a legend for the case filed by defendant in court against Plaintiff. Dkt. No. 56-7.  "Where an attorney is interposed as an intermediary between a debt collector and a consumer, [the Second Circuit] assume[s] the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."  *Kropelnicki,* 290 F.3d at 128.  That assumption is fair here.  The questions posed and the information requested by the Letter are akin to what counsel for a debt collector would request from counsel for a debtor through interrogatories and document requests in litigation.  In that setting, no consumer could believe that the requests themselves were misleading.  The FDCPA not only "ensures the protection of all consumers, even the naïve and the trusting, against deceptive debt collection practices," but it also "protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices."  *Cloman*, 988 F.2d at 1320.  An interpretation of the FDCPA that precluded a debt collector in litigation from requesting evidence of the debtor's claim to be a victim of false identity would give every debtor a free pass to avoid its obligations on his simple say-so.  It follows ineluctably that a communication between counsel for a debt collector and a debtor seeking the same information pre-litigation or without formally invoking rules of civil procedure cannot be misleading simply because the debtor claims he does not owe the debt.  To hold otherwise would be to reach the untenable conclusion that a debt collector can investigate the facts necessary to determine whether to bring suit only by bringing suit.

"There is case law to suggest that an attempt to collect a debt from a non-debtor may be a false representation of the character or legal status of the debt." Dkt. No. 42 at ECF p. 22 n.14 (citing *Bodur v. Palisades Collection*, *LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011)). At the same time, however, to violate the FDCPA, the debt collector must have made a "false representation" regarding the "character" of the debt. The *Bodur* case is readily distinguishable. In *Bodur*, the debt collector acknowledged that the plaintiff in that case was mistakenly dunned, but it proceeded to communicate with the plaintiff and designate him as the debtor in its communications. *Bodur*, 829 F. Supp. 2d at 255. *Bodur* cites additional cases where a debt collector *knowingly* seeks to collect a debt from the wrong person. *See, e.g.*, *Valdez v. Cap. Mgmt. Servs., LP*, 2010 WL 4643272, at *12 (S.D. Tex. Nov. 16, 2010); *Johnson v. Bullhead Invs., LLC*, 2010 WL 118274, at *6 (M.D.N.C. Jan. 11, 2010). Consistent with these cases, an inquiry about the ownership of a debt cannot be a "false representation" unless there is an indication, express or implied, that the plaintiff is the owner of the debt and it is sent in connection with the collection of the debt. Unlike in *Bodur* and its supporting cases, the entire point of the Letter was to investigate Plaintiff's claim that he was not responsible. As such, Defendant's Letter sent to counsel and seeking to investigate who is responsible for the Account does not constitute a false representation of the character or legal status of the debt under Section 1692e(2)(A).

The same conclusion follows for largely the same reasons with respect to Plaintiff's allegation that the Letter violated Section 1692e(10) by misrepresenting Plaintiff's responsibility for the Account and seeking to "collect or attempt to collect any debt or to obtain information concerning a consumer." Dkt. No. 58 at ECF p. 19; 15 U.S.C. § 1692e(10). A communication can be deceptive if the terminology is misleadingly vague, *Pipiles v. Credit Bur. of Lockport,*

*Inc.*, 886 F.2d 22, 25 (2d Cir. 1989), or if it is "open to more than one reasonable interpretation, at least one of which is inaccurate," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996); *see also Cloman*, 988 F.2d at 1319. Moreover, the least sophisticated consumer standard imposes a "materiality requirement" for a deceptive communication to amount to a violation of the statute. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015). Only if a statement "is capable of influencing the decision of the least sophisticated debtor" is it sufficiently material. *Id.*

A reasonable jury could not conclude that the Letter was deceptive or a false representation under Section 1692e(10). Plaintiff has not identified anything that is deceptive or false in the Letter. The Letter plainly communicates that it is an effort to collect information about Plaintiff's identity-theft claim as part of its ongoing debt-collection efforts. The Letter's subject line is transparent that it pertains to the ongoing collection case against Plaintiff. The Letter also makes clear that it is following up on Plaintiff's previous claim of identity theft and is requesting additional information to validate Plaintiff's claim. "If Plaintiff were to follow the Letter's instructions to provide certain information for an identity theft claim, that information would indeed be used for the purpose of collecting a debt from whomever had stolen Plaintiff's identity and incurred the debt." *Ozturk v. Amsher Collection Servs., Inc.*, 2022 WL 1602192, at *8 (D.N.J. May 20, 2022). It might also be used for the purpose of evaluating the credibility of Plaintiff's identity-theft claim. But there is nothing misleading about that. A debt collector is permitted to ask for information about a claim of identity theft so long as its communication is not misleading. *See Woods v. LVNV Funding, LLC*, 27 F.4th 544, 547, 551 (7th Cir. 2022) (allowing defendant to conduct an identity-theft investigation); *Ozturk*, 2022 WL 1602192, at *8 (same). The Letter would not mislead even the least sophisticated consumer, and particularly one represented by counsel, into taking an action he would not otherwise take. As the United

30

States District Court for the District of New Jersey cogently put it, "If anything, the identity theft information might assist a victim who is unaware of the opportunity to file an identity theft claim to do just that.  But that is hardly misleading—let alone materially so—and irrelevant to the crux of Plaintiff's claim that the joint purposes of this Letter, when combined, were false, deceptive, and misleading.  *Ozturk*, 2022 WL 1602192, at *9.

Accordingly, a reasonable jury could not conclude that the Letter is a deceptive or false representation under Section 1692e(10).[8]

### B.      Section 1692f

Plaintiff further claims that Defendant violated Section 1692f by sending the Letter because there is no agreement creating the Account.  Section 1692f makes it unlawful for a debt collector to "use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Among its subsections, Section 1692f makes it unlawful for a debt collector to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Defendant argues it cannot be held liable under this provision because (1) an agreement existed for the Account; and (2) Defendant's conduct was not unfair or unconscionable.  Dkt. No. 56 at ECF pp. 12–14.

The Second Circuit has defined Section 1692f's "unfair or unconscionable means" as "practices that are 'shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness.'"  *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (quoting *Gallego v. Northland Grp., Inc.*, 814 F.3d 123, 128 (2d Cir. 2016)).  Construed as

---

[8] In fact, the Letter is modeled off the identity-theft affidavit provided by the FTC.  Dkt. No. 42 at 32 & nn.20-21 (citing Federal Trade Commission, *Taking Charge: What To Do If Your Identity Is Stolen* H-1-H-6 (Apr. 2013), available at https://www.justice.gov/usao-wdmi/file.764151/download).

"a catchall provision," *Rogers v. Cap. One Servs., LLC*, 447 F. App'x 246, 249 (2d Cir. 2011) (summary order), Section 1692f broadly targets "practices that give the debt collector an unfair advantage over the debtor or are inherently abusive," *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 166 (2d Cir. 2020) (quoting *Arias*, 875 F.3d at 136). Consistent with the rest of the FDCPA, the Second Circuit evaluates Section 1692f claims under the "least sophisticated consumer" standard. *See Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016); *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008).

Liability under Section 1692f(1), unlike under Section 1692e, does not turn upon whether the person from whom the debt is sought to be collected is the party to the agreement creating the debt. Section 1692f(1) only requires that the collection of a debt be "expressly authorized by *the agreement creating the debt*" and does not specify who the parties to that agreement must be. 15 U.S.C. § 1692f(1) (emphasis added). Indeed, courts have refused to impose liability under Section 1692f(1) simply because a debt collector erroneously sought to collect from the wrong person. *See, e.g.*, *Wagner v. Chiari & Ilecki, LLP*, 2019 WL 1083025, at *9 (W.D.N.Y. Mar. 7, 2019), *aff'd in relevant part*, 973 F.3d 154; *Barrios v. Enhanced Recovery Co., LLC*, 2018 WL 5928105, at *4 (E.D.N.Y. Nov. 13, 2018); *Thompson v. CACH, LLC*, 2014 WL 5420137, at *6 (N.D. Ill. Oct. 24, 2014); *Taylor v. Midland Credit Mgmt.*, 2008 WL 544548, at *4 (W.D. Mich. Feb. 26, 2008); *Transamerica Fin. Servs., Inc. v. Sykes*, 1998 WL 325231, at *3 (N.D. Ill. June 10, 1998). Section 1692f(1) focuses on "the abusive practice of collecting an amount greater than that which is owing," whereas "[a]n attempt to collect from the wrong individual is better characterized as going to the character or status of the debt rather than the amount owing." *Taylor*, 2008 WL 544548, at *4 (citing *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991)).

The thrust of Plaintiff's claim is that the Letter was unfair or unconscionable because it was directed to a person who was not did not owe the debt.  But, while under certain circumstances the attempt to collect a debt from a person who does not owe it can violate Section 1692e, such conduct alone does not violate Section 1692f.

Plaintiff has not adduced any other evidence from which a reasonable jury could find that Defendant attempted to collect an amount not "expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Defendant has submitted the specific Card Agreement between Citibank and the cardholder relating to the Account.  *See* Dkt. No. 56-3 at ECF pp. 40–50.  Assuming, without concluding, that the Letter could be construed to be an attempt to collect a debt, there is no dispute that the charges at issue were incurred in connection with and were authorized by the card agreement.  Plaintiff has not alleged that through the Letter Defendant sought to collect an amount greater than that owed to the Account.  Plaintiff has only alleged that Defendant sought to collect the uncontested amount from the wrong individual. Section 1692f(1) does not apply to these circumstances.

Nor is there other evidence from which a jury could conclude that Defendant engaged in "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f. Even construing the evidence favorably to Plaintiff as the non-moving party, the most that a reasonable jury could conclude is that Defendant sought evidence to test and confirm Plaintiff's claim to have been a victim of identity theft.  Such conduct did not confer an unfair advantage on the debt collector.  Plaintiff was the person in possession of the evidence regarding whether he was the victim of identity theft; Defendant was not.  It also was not inherently abusive.  "The FDCPA . . . does not prohibit debt collectors from requesting that consumers support their claims of identity theft with notarized affidavits or police reports and . . . multiple courts have held that

such requests are permissible under the FDCPA."  Dkt. No. 42 at 25 (quoting *Story*, 2015 WL 7760190, at *8).  For these reasons, Section 1692f was not violated.

## CONCLUSION

Defendant's motion for summary judgment, Dkt. No. 55, is granted.  The Clerk of Court is respectfully directed to close Dkt. No. 55 and close this case.


SO ORDERED.


Dated: February 29, 2024
      New York, New York
                                  LEWIS J. LIMAN
                          United States District Judge